USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 96-1885 GIDEL RIVERA-FLORES, Plaintiff, Appellant, v. BRISTOL-MYERS SQUIBB CARIBBEAN, ET AL., Defendants, Appellees. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this Court issued on April 25, 1997 is corrected as follows: On the cover sheet, insert prior to date of decision "Jay A. ______ Garcia-Gregory and Fiddler, Gonzalez & Rodriguez on brief for appellee ______________ _____________________________ Prudential Insurance Company." United States Court of Appeals For the First Circuit ____________________ No. 96-1885 GIDEL RIVERA-FLORES, Plaintiff, Appellant, v. BRISTOL-MYERS SQUIBB CARIBBEAN, ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Jose A. Fuste, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ Octavio A. Diaz-Negron, Idalia M. Diaz and Peter J. Porrata for _______________________ ______________ _________________ appellant. Carl Schuster, with whom Maria Santiago de Vidal, Maria ______________ ___________________________ _____ Maldonado-Nieves and Schuster Usera Aguilo & Santiago were on brief ________________ _________________________________ for appellees. Jay A. Garcia-Gregory and Fiddler, Gonzalez & Rodriguez on brief _____________________ ______________________________ for appellee Prudential Insurance Company. ____________________ April 25, 1997 ____________________ LYNCH, Circuit Judge. Gidel Rivera-Flores worked LYNCH, Circuit Judge. ______________ first as a machine cleaner and later as a line operator for Squibb Manufacturing Inc. ("SMI") in Humacao, Puerto Rico. Some two years after his employment was terminated under a severance program, Rivera, who wore a prosthetic device in place of his lower left leg, sued SMI and its insurer, Prudential Insurance Co., under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 et seq., the __ ____ Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 et seq., and other federal and Puerto Rico employment __ ____ statutes. The employer countered with a waiver and release which Rivera had executed when his employment terminated and for which he received certain benefits. Rivera responded that the release was invalid. On cross-motions for summary judgment, the district court entered summary judgment for the defendants. Rivera appeals. This case raises an issue of first impression in this circuit concerning the enforceability under the ADA of waivers and releases of claims by employees. We hold that the general principles for evaluating such waivers and releases, enunciated by this court for claims arising under other employment statutes, apply to the ADA as well: ADA waivers and releases must be knowing and voluntary, as evidenced by the totality of the circumstances. -3- 3 Whatever the merits of any claims Rivera had arising out of his employment,1 he presented no competent evidence that created a genuine issue of material fact as to whether his waiver and release were voluntarily and knowingly given, and whether he had the capacity to give such a release. We affirm. I. Rivera was born in 1953 and has a high school education. He began working for SMI in June 1984; before that he worked as a police officer for ten years. Rivera's left leg had been amputated below the knee after a motorcycle accident he suffered in 1982 when he was a police officer. His work assignments at SMI, despite his requests for accommodation (which were partially met), caused his stump to become irritated and bleed. In pain, he began exhibiting symptoms of, and eventually received a letter from a doctor diagnosing him with, post-traumatic stress disorder and an anxiety disorder. Rivera left work due to disability in December 1992. In the spring of 1993, he received a letter inviting him to participate in a voluntary separation plan. He sent a letter accepting this invitation. He also applied for long-  ____________________ 1. There is no indication in the record that plaintiff first presented his claim to the Equal Employment Opportunity Commission ("EEOC"), which is a prerequisite to bringing suit under the ADA. Defendants never raised this issue and it was not argued before us. We decline to address the matter. -4- 4 term disability benefits available through the employer and submitted a statement in support from his attending physician. The insurer denied the request for long-term disability benefits; Rivera sought reconsideration in September of 1993 and submitted further documentation to the insurer. Rivera pursued his claims for disability benefits throughout 1993 and thereafter.2 In the fall of 1993, faced with the shutdown of certain of its operations, SMI sent Rivera and other employees a letter of dismissal stating that all employees who wished to receive voluntary separation benefits had to sign a waiver agreement. Under the terms of the Separation Agreement and General Release Form (the "Agreement"), dated October 18, 1993, the employee agreed that he would make no legal claims against the company or its insurer.3 He received, in turn, certain benefits beyond those he was otherwise entitled to receive. The Agreement stated that the  ____________________ 2. In response to his claim for disability benefits, the Social Security Administration found in September 1994 that Rivera was disabled and suffered from pain, post-traumatic stress disorder and dysthymic disorder. 3. The Agreement provided in relevant part that the employee agreed that "he shall file no action against the Company, nor against any entity or person associated with the Company . . . before any agency or administrative instrument, board or court, federal or local, which might be directly or indirectly related to his employment with the Company or with the termination of the same." The Agreement encompassed causes of action including but not limited to the "'Americans with Disabilities Act,' or the local legislation that protects persons with physical and/or mental impairments." -5- 5 signatory acknowledged that he was signing the Agreement voluntarily, that he fully understood the Agreement, that he had been advised to consult with a legal representative, and that he had seven days to revoke his consent. On December 1, 1993, Rivera executed the Agreement. He never revoked his consent. He now claims that he signed the Agreement, which he did not read at the time, under duress and while he was suffering under a psychiatric disability. II. Rivera challenges the validity of the release on three grounds: that enforcement of the release would be contrary to the policies animating the ADA, that the evidence raised a dispute as to whether the execution of the release was knowing and voluntary, and that he should have been permitted to take additional discovery. The first two issues are intertwined. Courts have, in the employment law context, commonly upheld releases given in exchange for additional benefits. Such releases provide a means of voluntary resolution of potential and actual legal disputes, and mete out a type of industrial justice. Thus, releases of past claims have been honored under the laws prohibiting race and gender discrimination. Warnebold v. Union Pac. R.R., 963 _________ ________________ F.2d 222, 223-24 (8th Cir. 1992); cf. Alexander v. Gardner- ___ _________ ________ Denver Co., 415 U.S. 36, 52 (1974). Such releases have also __________ -6- 6 been honored under the ADEA, which prohibits age discrimination in employment, e.g., Pierce v. Atchison T. & ____ ______ _____________ S.F. Ry. Co., -- F.3d -- (7th Cir. Mar. 27, 1997), as well as ____________ under ERISA, e.g., Smart v. Gillette Co. Long-Term Disability ____ _____ _________________________________ Plan, 70 F.3d 173, 181 (1st Cir. 1995); Rodriguez-Abreu v. ____ _______________ Chase Manhattan Bank, N.A., 986 F.2d 580, 587 (1st Cir. ____________________________ 1993). Where Congress has wanted to insure particular protections for the employees in the procedures for obtaining releases, it has done so, for example in the Older Workers Benefits Protection Act amendments to the ADEA. 29 U.S.C. 626(f). No such special procedures are set forth in the ADA. The protection Congress wished to afford to disabled workers is consistent, we believe, with permitting those workers to resolve their claims by executing a release in exchange for benefits they would not otherwise receive. The ADA clearly encourages private resolution of employment disputes, such as by requiring that employers attempt to make reasonable accommodations and that the EEOC try to settle disputes informally. See, e.g., Hodges, Mediation and the _________ _________________ Americans with Disabilities Act, 30 Ga. L. Rev. 431, 437 ________________________________ (1996). The ADA also expressly provides that its enforcement procedures shall be the same as those for Title VII, 42 U.S.C. 12117(a), and releases have long been accepted in -7- 7 that context. In addition, although claims concerning employment arise under Title I of the ADA, it is noteworthy that the EEOC Regulations under Title III of the ADA (public accommodations) expressly provide for settlement of disputes. 28 C.F.R. 36.506. Certainly there is nothing in the ADA prohibiting such releases. Indeed, as the district court pointed out, the report of the conference committee on the ADA evinces an intent to permit individuals to settle or waive claims under the ADA by express, voluntary agreement. H.R. Rep. No. 101- 596 (1990), reprinted in 1990 U.S.C.C.A.N. 267, 598. ______________ Prohibiting such waivers under the ADA on policy grounds arguably would display the same stereotyping and patronizing attitudes toward the disabled which Congress hoped to remedy in enacting the ADA. We conclude that such releases are permissible under the ADA, and turn to whether the release at issue here was valid. Waiver and release are affirmative defenses on which the employer bears the burden. Fed. R. Civ. P. 8(c); see Long v. Sears Roebuck & Co., 105 F.3d 1529, 1543 (3d Cir. ___ ____ ___________________ 1997). At a minimum, judicial review of such waivers and releases has been designed to ensure that they are "knowing and voluntary." Smart, 70 F.3d at 181. That analysis _____ necessitates some focus on the rights being waived and the congressional intention to protect such rights. This court -8- 8 has endorsed a "totality of circumstances" approach to determining the validity of the waiver. Id. We have found ___ helpful, but not exclusive, a set of six factors identified by the Second Circuit in Finz v. Schlesinger, 957 F.2d 78, 82 ____ ___________ (2d Cir. 1992).4 And yet, a challenge to a release by a person who asserted to the employer that he was disabled at the time of execution of the release may, on particular facts, warrant heightened judicial scrutiny.5 While certain claimed disabilities may inherently raise a question about whether the employee has the capacity to give a knowing and voluntary waiver, that is not the case here. It is not enough for an employee simply to assert that he was disabled at the time he executed the release and the employer knew it. The definition in the ADA of "disability" covers three categories, including the mere perception that someone is disabled. 42 U.S.C. 12102(2); Soileau v. Guilford of _______ ____________ Maine, Inc., 105 F.3d 12, 15 (1st Cir. 1997). Nor is it ___________  ____________________ 4. The six factors are: (1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver. Smart, 70 F.3d at 181 n.3. _____ 5. Unlike waiver of pension benefits under ERISA, waiver of welfare benefits such as those at issue here are not, as a general matter, subject to heightened scrutiny. Rodriguez- __________ Abreu, 986 F.2d at 587. _____ -9- 9 enough to assert that the nature of the disability was psychiatric. Not all disabilities and not all psychiatric disabilities inherently involve a question about capacity to __________ act knowingly and voluntarily. Cf. United States v. ___ ______________ Schneider, -- F.3d -- (1st Cir. Apr. 15, 1997). _________ Thus, the operative question is whether there is a genuine issue as to whether Rivera had the capacity to execute the release knowingly and voluntarily. Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Here, the only sworn evidence as to Rivera's condition and its effects is the statement in his own affidavit: "I was very depressed because I could no longer work; anxious and confused and was under psychiatric treatment." Rivera failed to submit an affidavit from his treating psychiatrist or from any other medical expert.6 The court was left with no competent medical evidence going to  ____________________ 6. Rivera did submit a case summary prepared by his treating psychiatrist. However, as defendants pointed out in their reply memorandum in support of their motion for summary judgment, this document constituted inadmissible hearsay. It was not supported by an accompanying affidavit. Plaintiff failed to remedy this evidentiary infirmity even after it was brought to his attention in this manner. -10- 10 his capacity to execute the release. Cf. Garside v. Osco ___ _______ ____ Drug, Inc., 895 F.2d 46, 49-50 (1st Cir. 1990). __________ Rivera did submit the decision of the administrative law judge who presided over his collateral action seeking disability benefits under the Social Security Act. The administrative law judge found that Rivera suffered from dysthymia as well as post-traumatic stress disorder. Even giving these findings some evidentiary weight they are insufficient, without more, to create a genuine issue of fact as to Rivera's mental capacity. Mere evidence of diagnostic labels without content tying them to capacity to give valid consent is inadequate to create an issue as to the consequences of the disorders on an individual's capacity to give valid consent. Rivera never states in his affidavit that his condition was such that he could not give voluntary and knowing consent. The social security judge's decision says nothing on these points. And, as we said, there was no affidavit from any doctor. Furthermore, despite his diagnosed dysthymia and post-traumatic stress disorder, during this period he was actively pursuing his disability claim and did not tell his employer and its insurer that he lacked the capacity to do so. On this record, there is no evidence sufficient to establish lack of capacity. In reaching this conclusion, we say nothing about the outcome in -11- 11 a case involving similar facts in which the plaintiff put on competent medical evidence. We consider the remaining circumstances. Rivera had 42 days to examine the Agreement,7 discuss it with whomever he chose and ask questions before he signed it. Rivera attempts to raise a dispute about when he actually received the Agreement. However, the employer filed with its summary judgment papers a receipt for the release executed by Rivera. Rivera has not fairly met this evidence. At most, his affidavit says that he did not recall if he received the release then. That is insufficient to create a genuine issue of fact. See Ayer v. United States, 902 F.2d 1038, 1045 (1st ___ ____ _____________ Cir. 1990); cf. Perez de la Cruz v. Crowley Towing & Transp. ___ ________________ ________________________ Co., 807 F.2d 1084, 1086-87 (1st Cir. 1986). ___ The district court sensitively analyzed the totality of the circumstances here, commenting on Rivera's lack of business sophistication. The court noted that Rivera was given the Agreement and release along with a letter of termination, which suggested there was little room for negotiation. However, as the district court pointed out, the language of the release is clear and unmistakable: the waiver clause expressly mentions the ADA and states that all  ____________________ 7. The Agreement was internally inconsistent in that it provided for at least a 45-day period for examining the document but apparently expired 44 days after the date it was issued. We need not reach this issue, however, as plaintiff never claimed that the Agreement was invalid for this reason. -12- 12 claims for disability are released. The district court concluded that Rivera's sense that he was treated unjustly in this situation does not mean that his signing the Agreement was not voluntary or knowing. Rivera argues that the district court was required to rule first on the merits of his liability claims against the employer before reaching the issue of waiver. This argument has the matter exactly backwards. Even if Rivera had valid claims under the ADA and other statutes, he could have waived those claims. It was both logical and efficient to take up first the matter of waiver. As for Rivera's argument that he was denied discovery, it is too little and too late. Our review of the district court's discovery-related decisions is for abuse of discretion, and "[w]e will intervene in such matters only upon a clear showing of manifest injustice." Mack v. Great ____ _____ Atl. & Pac. Tea Co., 871 F.2d 179, 186 (1st Cir. 1989). ______________________ Here, Rivera never argued to the district court that he needed additional discovery before filing his opposition to summary judgment; nor did he file an affidavit under Fed. R. Civ. P. 56(f). Indeed, he filed a cross-motion for summary judgment. Under these circumstances, there was no abuse of discretion. -13- 13 For these reasons, to the extent (if at all) that Rivera's remaining non-ADA claims have been preserved, the waiver and release are valid as to them. Affirmed. ________ -14- 14