**Wayne HOGAN, Plaintiff,**

v.

**EASTERN ENTERPRISES/BOSTON GAS, Defendant.**

**No. CIV. A. 200011729RBC [1].**

United States District Court,
D. Massachusetts.

Sept. 27, 2001.

---

1. With the parties' consent, on April 4, 2001, this case has been referred and reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

Scott F. Gleason, Gleason Law Offices, P.C., Haverhill, MA, for Plaintiff.

David J. Santeusanio, Bradford J. Smith, Goodwin Procter LLP, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS (# 5)

COLLINGS, Chief United States Magistrate Judge.

## I. INTRODUCTION

In late August of 2000, plaintiff Wayne Hogan ("Hogan" or "plaintiff") instituted the instant action against defendant Eastern Enterprises/Boston Gas ("Boston Gas" or "defendant"). The claims alleged in the four count complaint, violations of ERISA (Count I), common law misrepresentations (Count II), equitable estoppel (Count III) and breach of the implied covenant of good

faith and fair dealing (Count IV) respectively, all relate to or arise out of Hogan's participation in a Voluntary Retirement Enhancement Plan offered by his employer.

In lieu of answering the complaint, Boston Gas filed a motion to dismiss pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted (# 5) together with a memorandum in support (# 6). In turn, the plaintiff has filed a memorandum in opposition to the dispositive motion. (# 7) Following the submission of the defendant's reply brief (# 9), oral argument was set for and heard on August 16, 2001. At this juncture, the motion to dismiss is in a posture for resolution.

## II. THE STANDARD

The Rule 12(b)(6) standard is quite familiar. In deciding the defendant's motion to dismiss, the Court must "accept the complaint's allegations as true, indulging all reasonable inferences in favor of [the plaintiff]." *Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1 Cir., 1997). Indeed, when the sufficiency of a complaint is tested, it has long been the law that such "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)(footnote omitted). At the same time, "bald assertions,...subjective characterizations, optimistic predictions, or problematic suppositions" need not be credited. *United States v. AVX Corp.*, 962 F.2d 108, 115 (1 Cir., 1992)(internal quotations omitted).[2]

---

**2.** As noted in a leading treatise:

Dismissal under Rule 12(b)(6) may also be appropriate when a successful affirmative defense or other bar to relief appears

on the face of the complaint, such as the absolute immunity of a defendant, claim preclusion, or the statute of limitations.

The defendant has appended two documents to its memorandum of law (# 6), the Essex County Gas Company Voluntary Retirement Enhancement Plan July 1998 (Exh. A) ("the Plan") and the Essex County Gas Company Section I Election Form and Release of Claims (Exh. B)("the Release"), for review by the Court in ruling on the dispositive motion. Although neither of these documents is attached as an exhibit to the complaint, both are specifically referenced in its text and are integral to the plaintiff's claims. When deciding a motion to dismiss,

> Ordinarily, of course, any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56. *See* Fed.R.Civ.P. 12(b)(6). However, courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. *See, e.g., Romani v. Shearson Lehman Hutton,* 929 F.2d 875, 879 n. 3 (1st Cir. 1991) (considering offering documents submitted by defendants with motion to dismiss claim of securities fraud); *Fudge v. Penthouse Int'l, Ltd.,* 840 F.2d 1012, 1014–15 (1st Cir.) (considering allegedly libelous article submitted by defendants with motion to dismiss), *cert. denied,* 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *Mack v. South Bay*

*Beer Distrib., Inc.,* 798 F.2d 1279, 1282 (9th Cir.1986) ("[O]n a motion to dismiss a court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment."); *see also In re Wade,* 969 F.2d 241, 249 & n. 12 (7th Cir.1992).

*Watterson v. Page,* 987 F.2d 1, 3–4 (1 Cir., 1993).

The Plan and the Release fall within the narrow exception to the general rule and thus may properly be considered in the context of this pending Rule 12(b)(6) motion.

### III. THE FACTS

The place to begin is with an examination of the allegations of the complaint. Hogan is an individual who for more than forty years was employed by Essex County Gas Company. (Complaint # 1 ¶ 4) In late 1997 [3] defendant Boston Gas made an offer to purchase Essex County Gas Company and, upon consummation of the deal in 1998, became that company's successor in interest. (# 1 ¶¶ 5, 6) When announced, the offer to purchase engendered concern among the employees of Essex County Gas Company, including the plaintiff, who were apprehensive about their job security. (# 1 ¶ 7)

At some point after the announcement of the sale was made to the Essex County Gas Company employees, it is alleged that Hogan

---

Defenses that require a factual review to be established (as ordinarily occurs with qualified immunity, for example) should not support a dismissal for failure to state a claim. If, however, the complaint itself sets forth facts showing that qualified immunity applies, the court may properly dismiss the claim.

2 *Moore's Federal Practice,* § 12.34[4][b] (Matthew Bender 3d ed.)(footnotes omitted).

**3.** It is actually alleged in the complaint that the employees of Essex County Gas Company were notified of the Boston Gas's offer to purchase on or about December 23, 1998. (# 1 ¶ 6)(emphasis added) It is presumed that the date should read 1997 since all the activity with respect to the Plan and the Release took place in July/August of 1998 and would not have predated the original announcement. (# 1 ¶¶ 17–19)

was specifically informed at a luncheon with James Keating, Vice President and Treasurer of Essex County Gas Co. and William Beaton of Human Resources and Customer Service at Essex County Gas Company that an Early Retirement Plan and Severance Package would be introduced to key long term managerial/exempt employees such as plaintiff...[and] that under the proposed plan, not yet finalized, he would be offered an additional five years added to both his age and service time and that the company would also pay his existing medical and dental coverage. In addition, his life insurance would drop from twice his annual salary to a flat $20,000.00 and his annual pension would be $20,300.00.

Complaint # 1 ¶¶ 10–11.

According to the plaintiff, he inquired of Messrs. Hastings and Beaton whether the Essex County Gas Company office in Haverhill where he worked would remain open after the sale. (# 1 ¶ 12) Their response was "that it was doubtful that the Haverhill Office would remain open and that the defendant did not have the financial resources to retain much (sic) of the Essex County Gas Co. workers." (# 1 ¶ 13) Hogan also asked whether there was going to be a Social Security supplement offered to cover the working years lost consequence an early retirement. (# 1 ¶ 14) Mr. Hastings reportedly replied "that there would not be a Social Security Supplement because there was a possibility that Boston Gas would have to contribute to the Essex County Pension Fund to cover ten additional early retirees." (# 1 ¶ 15) Hogan was advised at that luncheon that the proposal "was not an official offer." (# 1 ¶ 16)

In July of 1998 the official voluntary early retirement offer which incorporated substantially the same terms as had been previously discussed was made to the plaintiff. (# 1 ¶ 17[4]) By its terms, in order to be eligible to participate in the Plan Hogan had to be "a management/non-Union employee and not an executive officer of the Company, and have attained age 55 or older and have at least 10 years of service and be actively employed as of July 1, 1998." (# 6, Exh. A at 1) The benefit enhancements provided in the Plan were the addition of five years to each of the employee's age and years of service. (# 6, Exh. A at 1) Health insurance coverage was to remain the same as what was then offered to Essex County Gas Company retirees, while the life insurance benefit would decrease from two times an employee's salary to $20,000.00 upon retirement.[5] (# 6, Exh. A at 3)

The Plan provided that eligible employees had until August 24, 1998 to elect to participate. (# 6, Exh. A at 5) If an employee chose to participate, he or she would then have seven days within which to revoke that election. (# 6, Exh. A at 5) Hogan contends that:

> Relying on the representations that a Social Security Supplement was not being considered, that Boston Gas did not have the financial resources to provide same, that the Haverhill Essex County Gas office was to be closed, therefore leading to the conclusion that termination of his employment was likely, the plaintiff accepted the offer of an early retirement and signed a document entitled "Essex County Gas Company Voluntary Retirement Enhancement Plan"

---

**4.** Hogan notes that in the official offer the amount of his annual pension was reduced to $19,600.00. (# 1 ¶ 17)

**5.** A further reduction was made in the life insurance benefit at age seventy.

on August 28, 1998[6].

Complaint # 1 ¶ 18.

By signing the Release, Hogan acknowledged that he had had at least forty-five days to consider the Plan and would thereafter have seven days within which to renege his acceptance. (# 6, Exh. B ¶¶ 1,2) Moreover, in executing the Release the plaintiff

affirm[ed] that I had been given adequate time to consider its terms and the terms of the [Plan] and that I had been given an opportunity to have any and all questions with respect to them answered. I affirm further that I have carefully read and I fully understand the meaning and intent of this Election Form and Release of Claims and the [Plan] and that I freely and voluntarily assent to all of the terms and conditions contained in them and that no one has forced, pressured, coerced or threatened me in any way in my decision to enter into and be bound by them, nor has anyone made any promises to me which are not set forth herein to cause or induce me to sign this Election Form and Release of claims and I affirm that my doing so is my own free and voluntary act.

Defendant's Memorandum # 6, Exh. B ¶ 3.

The terms of the Release recited that Essex County Gas Company had counseled Hogan to seek legal advice before agreeing to participate in the Plan and that he had either done so, or had purposely chosen not to do so, before he accepted the Plan and executed the Release. (# 6, Exh. B ¶ 6) The plaintiff affirmed that the Plan and the Release represented the entire agreement between himself and Essex County Gas Company, superceding prior written or oral understandings or agree-

ments, if any. (# 6, Exh. B ¶ 5) Lastly, in pertinent part, the Release provided

I release and discharge Essex County Gas Company, and Eastern Enterprises and their subsidiaries....from any and all claims, debts, demands, causes of action, suits, damages and rights to monetary or equitable relief of whatever nature and whether known or unknown for anything occurring up to and including the date on which I sign this Election Form and Release of Claims. This Release includes, but is not limited to, all claims I have, I have ever had, or may now have, for or related in any way to my employment with the Company or to the termination of my employment by the Company, including, but not limited to, any and all claims: arising under state, federal or local law for age discrimination, including for age discrimination under the Age Discrimination in Employment Act; wrongful discharge; breach of contract, actual or implied; race, gender, disability, handicap, or any other form of employment discrimination; breach of implied or express promises; intentional or negligent infliction of emotional distress; and any other action arising in tort, contract or equity.

Defendant's Memorandum # 6, Exh. B ¶ 4.

In his complaint Hogan alleges that he was not in a position of equal bargaining power when presented with said document [the Plan and Release]; was feeling intimidated in light of his financial circumstances, age, education and experience; and under duress and misapprehension of the material facts as presented by agents of the defendants (sic), when he signed said document.

Complaint # 1 ¶ 20.

The plaintiff asserts that union employees were later offered a Social Security supple-

---

**6.** The date of August 28, 1998 appears to be an error. As noted, the Plan mandates that an election to participate be made by August 24, 1998, and the Release signed by Hogan is dated August 24, 1998. (*See* # 6, Exh. A at 5–6, Exh. B at 3–4)

ment, that the defendant's operating earnings increased and that the Haverhill office had remained open at least until the date of the filing of his complaint. (# 1 ¶¶ 21–23)

## IV. DISCUSSION

Boston Gas maintains that the Release which Hogan signed on August 24, 1998 bars his claims such that the complaint should be dismissed. Specifically, according to the terms of the Release, the plaintiff agreed to "release and discharge Essex County Gas Company, and Eastern Enterprises and their subsidiaries...from any and all claims...whether known or unknown for anything occurring up to and including the date on which I sign this...Release..includ[ing]...all claims I have, have ever had, or may now have, for or related in any way with the Company or to the termination of my employment by the Company." (# 6, Exh. B ¶ 4)

According to the First Circuit

it is well settled that federal common law applies both to interpret the provisions of an ERISA benefit plan and to resolve "[i]ssues of relinquishment of rights and waiver" when such side agreements affect the benefits provided by an ERISA plan, *see Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 585, 587 (1st Cir.1993). *See also Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 178 (1st Cir.1995)... The relevant federal substantive law includes "the 'common-sense canons of contract interpretation'" derived from state law, *see Rodriguez–Abreu,* 986 F.2d at 585 (internal citations omitted), including the teaching that "contracts containing unambiguous language must be construed according to their plain and natural meaning," *Smart,* 70 F.3d at 178.

*Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan,* 167 F.3d 709, 711–2 (1 Cir., 1999); *see also Smart v. Gillette Company Long–Term Disability Plan,* 70 F.3d 173, 178 (1 Cir., 1995).

The language of the Release in this case is unambiguous and plainly applies to the four claims alleged by Hogan in his complaint.

In comparable circumstances, the Court has explained that

Waiver and release are affirmative defenses on which the employer bears the burden. Fed.R.Civ.P. 8(c); *see Long v. Sears Roebuck & Co.,* 105 F.3d 1529, 1543 (3d Cir.1997). At a minimum, judicial review of such waivers and releases has been designed to ensure that they are "knowing and voluntary." *Smart,* 70 F.3d at 181. That analysis necessitates some focus on the rights being waived and the congressional intention to protect such rights. This court has endorsed a "totality of circumstances" approach to determining the validity of the waiver. *Id.* We have found helpful, but not exclusive, a set of six factors identified by the Second Circuit in *Finz v. Schlesinger,* 957 F.2d 78, 82 (2d Cir. 1992). [FN4]

FN4. The six factors are: (1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver. *Smart,* 70 F.3d at 181 n. 3.

*Rivera–Flores v. Bristol–Myers Squibb*

*Caribbean,* 112 F.3d 9, 12 (1 Cir., 1997 [7]); *see also Morais,* 167 F.3d at 713.

The defendant posits that the Release in this case must be found to be knowing and voluntary when the pertinent factors are considered.

While Hogan's educational background cannot be gleaned from the face of the complaint, it is alleged that he had worked for Essex County Gas Company for about forty years and that in 1998 he was "a management/non-Union employee and not an executive officer of the Company." (# 6, Exh. A at 1 [8]) The Release was drafted by the Essex County Gas Company, but there is no allegation that the terms are somehow inequitable. *See Morais,* 167 F.3d at 714 [9] ("Although the document was prepared by the company, there is neither evidence about how its contents were developed nor evidence suggesting that the terms were unfair.") The text of the Plan is four pages in length, while the Release is three pages. Both are written in simple and clear prose. In the words of the First Circuit, "[t]he language is not challenging." *Morais,* 167 at 713.

According to the terms of the Release Hogan had a minimum of forty-five days to consider the retirement offer, and then another seven days within which to rescind his election to participate. This is an adequate period within which to review the documentation. *Smart,* 70 F.3d at 182 [10]. While it is unknown if the plaintiff in fact had the benefit of legal advice in making his election, he was unequivocally advised "to consult with an attorney" before executing the Release. (# 6, Exh. B ¶ 6) Lastly, Hogan received valuable consideration, five years added to both his age and years of service for calculation of his retirement benefits, in return for signing the Release.

Apart from these particular factors, the defendant also notes that the Release contains language to the effect that Hogan had "carefully read" and completely understood "the meaning and intent" of the Plan and Release and that he had "freely and voluntarily assent[ed] to the terms and conditions." (# 6, Exh. B ¶ 3) These acknowledgments, too, are viewed as indicative of the Release having been signed knowingly and voluntarily.

■ The allegations of the complaint raise the issue of duress which could implicate a finding that the plaintiff knowingly and voluntarily relinquished his rights. Boston Gas argues that even if the Release was voidable consequent to duress, Hogan has ratified the Release by his subsequent conduct.

Upholding a dismissal by the district court, the First Circuit reiterated that:

In *In re Boston Shipyard Corp.,* 886 F.2d 451 (1st Cir.1989), we said:

It is well settled that "[a] contract or release, the execution of which is induced by duress, is voidable, not void, and the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so."

*Id.* at 455 (*quoting Di Rose v. PK Management Corp.,* 691 F.2d 628, 633–34 (2d Cir.1982)). Applying this principle, we

---

**7.** The *Rivera–Flores* case was decided on a motion for summary judgment.

**8.** Although the defendant states that Hogan "served as Manager of the Essex County Gas's Haverhill, Massachusetts office" (# 6 at 6), that information cannot be weighed as it is not contained within the complaint, Plan or Release.

**9.** The *Morais* case was decided on a motion for summary judgment.

**10.** The *Smart* case was decided on stipulated facts.

found that a party had ratified a release agreement by accepting payment and waiting for over a year and one half before claiming that it was duress-induced. *Id.* We recently reiterated the rule. *See Vasapolli v. Rostoff,* 39 F.3d 27, 35 n. 5 (1st Cir.1994) ("A contract signed under duress is voidable, but not automatically void. By accepting the funds and failing to seek a remedy based on duress within a reasonable period of time . . ., the plaintiffs forfeited any entitlement to relief on this basis.") (citations omitted). *See also Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 22–24 (1st Cir.1993) (finding ratification of an allegedly avoidable release under New Hampshire law). Other courts agree. E.g., *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,* 971 F.2d 401, 409 (9th Cir.1992) (after accepting the benefits of an agreement for four years, party may no longer avoid the agreement based on claimed duress); *Grillet v. Sears, Roebuck & Co.,* 927 F.2d 217, 220 (5th Cir.1991) (retaining benefits of release for two years constitutes ratification).

*Deren v. Digital Equipment Corp.,* 61 F.3d 1, 2–3 (1 Cir.1995).

Similarly, in another case the district court concluded that the plaintiffs had ratified their settlement agreements with their employer "by accepting the benefits of their respective bargains and by waiting, respectively, between eleven and thirty-four months to disavow the agreements because of the alleged duress." *Dorn v. Astra USA,* 975 F.Supp. 388, 393 (D.Mass., 1997).

The reasoning of these decisions is fully applicable to this case. Hogan's assertion of duress is unavailing on the facts as alleged. He has retained the benefit of his bargain with the defendant. He waited almost exactly two years before he sought to avoid the Release. This was too little, too late. By his conduct, Hogan has ratified the Release, and, to the extent he is claiming duress, his complaint must be dismissed.

Theoretically the same holds true with respect to any suggestion that Hogan was fraudulently induced to execute the Release in reliance upon misinformation from the defendant.[11] The First Circuit has recognized the theory of fraudulent inducement as part of the federal common law applicable to an ERISA case, albeit in the context of an affirmative defense. *See Nash v. Trustees of Boston University,* 946 F.2d 960, 964–6 (1 Cir., 1991). Fraud in the inducement, like duress, renders a contract voidable, not void. *Nash,* 946 F.2d at 966–7; *see also Restatement (Second) Contracts* § 164(1)("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."). As previously stated, "[a] voidable contract can, of course, be ratified by subsequent conduct." *American Airlines v. Cardoza–Rodriguez,* 133 F.3d 111, 119–20 (1 Cir.1998). On the facts of this case, however, there is no need to reach the question of whether the Release was voidable consequent to fraud in the inducement and thereafter ratified or affirmed by Hogan because the statements were predictions by personnel at Essex County Gas Company as to future actions which might or might not be taken by Boston Gas after the acquisition, and as such, Hogan was not justified in relying upon them.

The First Circuit has written that:

---

**11.** Such a contention, of course, directly contradicts the express language of the Release: ". . .nor has anyone made any promises to me which are not set forth herein to cause of induce me to sign this Election Form and Release of Claims." (# 6, Exh. B ¶ 3)

Recovery in an action for the tort of misrepresentation (sometimes referred to as fraud or deceit) requires a showing that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducting the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage. *Metropolitan Life Ins. Co. v. Ditmore*, 729 F.2d 1, 4 (1st Cir. 1984) (*quoting Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152, 190 N.E.2d 867 (1963)) (citations omitted). The district court found that Bond justifiably relied on Martin's statement that M.N., Inc. was in the immediate process of going public in releasing him from the guaranty; that M.N., Inc. was not in the immediate process of going public; and that, absent this statement, Bond would not have executed the release.

Martin first argues that his representations to Bond were not actionable because, rather than statements of existing fact, they were "statements of opinion, of conditions to exist in the future, or of matters promissory in nature ..." *Pepsi–Cola Metropolitan Bottling Co. v. Pleasure Island, Inc.*, 345 F.2d 617, 622 (1st Cir.1965) (*quoting Yerid v. Mason*, 341 Mass. 527, 530, 170 N.E.2d 718 (1960)). While we agree that statements properly so characterized are not actionable, because "their truth cannot literal-

ly be known at the time they are made," *Liberty Leather Corp. v. Callum*, 653 F.2d 694, 698 (1st Cir.1981), we conclude that Martin's statements do not fall into this category.[12]

*Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.*, 764 F.2d 928, 935–6 (1 Cir.1985); *Damon v. Sun Company, Inc.*, 87 F.3d 1467, 1479–80 (1 Cir.1996); *Millen Industries, Inc. v. Flexo–Accessories Co., Inc.*, 5 F.Supp.2d 72, 73–4 (D.Mass.1998).

■ As alleged in the complaint, the statements upon which Hogan relied were "that it was doubtful that the Haverhill Office would remain and that the defendant did not have the financial resources to retain much of the Essex County Gas Co. workers" and "that there would not be a Social Security Supplement because there was a possibility that Boston Gas would have to contribute to the Essex County Pension Fund to cover ten additional retirees." (# 1 ¶¶ 13, 15) These are statements by Essex County Gas Company officials as to what actions Boston Gas might take in the future if or when Boston Gas consummated the deal to purchase Essex County Gas Company.[13] *Schott Motorcycle Supply, Inc. v. American Honda Motor Company*, 976 F.2d 58, 64–5 (1 Cir.1992)("The alleged misrepresentations consisted only of opinions as to future events. There were no circumstances indicating that plaintiff could justifiably rely on these

12. In the *Bond Leather* case, the statement was that M.N., Inc. "was in the process of going public and immediately needed to be released from the guaranty." The First Circuit wrote: "...this representation can scarcely be characterized as a mere prediction of future conduct, nor as a statement whose truth could not be ascertained at the time it was made. The statement that M.N., Inc. was 'in the process of going public' plainly purported to describe activity already under way. Likewise, that M.N., Inc. required a release 'immediately' suggested that there were exigent circumstances, requiring swift

action, which existed at the time the statements were made." *Bond Leather*, 764 F.2d at 936. These statements are in marked contrast to the statements upon which Hogan claims he relied in the instant case. *See discussion, infra*.

13. Indeed, the plaintiff alleges that at the time these statements were made he "was then told that this was not an official offer but something that Boston Gas was reviewing." (# 1 ¶ 16)

opinions as 'facts.'") Considering the statements which were made, the persons who made them and the circumstances in which they were made, they cannot form the basis of a claim of fraud.

▆▆ The statement that it was "doubtful" that the Haverhill office would remain open was simply not factually verifiable at the time such that Hogan could reasonably have relied upon it in executing the Release in the first instance. *See Elias Brothers*, 831 F.Supp. at 925–7. The same is true of the statement that Boston Gas "...did not have the financial resources to retain much of the Essex County Gas Co. workers." With the use of the indefinite term "much," there is no way the Essex County Gas Company officials could verify the truth of that statement. Moreover, and perhaps more important for present purposes, there is no allegation in the complaint that this statement was fraudulent, i.e., that, in fact, at the time, Boston Gas did have the financial resources to retain much of the Essex County Gas Company workers. The allegation that the operating revenues of Boston Gas increased after the acquisition does not amount to an allegation that this fact was known or knowable at the time of the acquisition.

▆▆ Lastly, the statement that there would not be a Social Security supplement "...because there was a possibility that Boston Gas would have to contribute to the Essex County Pension Fund to cover ten additional retirees" is of the same nature. From the terms of the statement itself, it was unknown whether Boston Gas would have to make the contributions. Also, there is no allegation that the statement was untrue when made. The allegation that later some employees received a So-

cial Security supplement is not the equivalent of an allegation that the statement was false when made.

As a matter of law, plaintiff was not justified in relying on these statements. Accordingly, plaintiff has not alleged a prima facie claim of fraudulent inducement and, consequently, cannot challenge the volition or knowledge with which he executed the Release on that grounds. *See, e.g., Bennett v. Coors Brewing Company*, 189 F.3d 1221, 1229–31 (10 Cir.1999).

Although the plaintiff does not directly refute the validity of the defendant's arguments, he does raise several points in opposition to the motion to dismiss, all of which can be addressed with dispatch. First Hogan takes the position that the complaint cannot be dismissed because he did not tender back the consideration that he received prior to filing suit. Boston Gas is seeking dismissal on the grounds of ratification, not Hogan's failure to tender back the consideration.[14] Having concluded that the plaintiff has ratified the Release, there is no sound reason to reach the question of a tender back requirement. *See, e.g., Deren*, 61 F.3d at 1 ("We express no view on whether ERISA plaintiffs must satisfy this "tender back" requirement. Instead, we affirm the court's dismissal on the ground that, by waiting so long to avoid the releases, plaintiffs have ratified them, thus waiving their claims.")

▆▆ Title 29 U.S.C. § 1110(a) reads, in pertinent part, that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." The plaintiff asserts that the Release falls within the purview of this statutory provision and thus is

---

**14.** Whether there is a requirement that consideration must be tendered back as a condition precedent to bringing an ERISA action has yet to be determined in this Circuit.

void as against public policy. This argument is unavailing. The First Circuit has recognized that

> Courts have, in the employment law context, commonly upheld releases given in exchange for additional benefits. Such releases provide a means of voluntary resolution of potential and actual legal disputes, and mete out a type of industrial justice. Thus, releases of past claims have been honored under the laws prohibiting race and gender discrimination. *Warnebold v. Union Pac. R.R.,* 963 F.2d 222, 223–24 (8th Cir. 1992); *cf. Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 52, 94 S.Ct. 1011, 1021–22, 39 L.Ed.2d 147 (1974). Such releases have also been honored under the ADEA, which prohibits age discrimination in employment, *e.g., Pierce v. Atchison T. & S.F. Ry. Co.,* 110 F.3d 431 (7th Cir.1997), as well as under ERISA, *e.g.,Smart v. Gillette Co. Long–Term Disability Plan,* 70 F.3d 173, 181 (1st Cir.1995); *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 587 (1st Cir.1993).

*Rivera–Flores,* 112 F.3d at 11–2; *see also Smart v. Gillette Company Long–Term Disability Plan,* 887 F.Supp. 383, 385 (D.Mass.), *aff'd,* 70 F.3d 173 (1 Cir.1995) ("Both parties agree that the conditioning of severance benefits on an agreement to waive an ERISA claim is not prohibited by the statute.")

■ Equally fruitless is the contention that the plaintiff's claims cannot be foreclosed by a contractual release agreement and that the Release is unconstitutional because it deprives Hogan of his due process rights. The First Circuit has written that

> Appellant labors to convince us that the agreement she signed was invalid because it amounted to a waiver, and the waiver, in turn, was unenforceable under

ERISA. We think that this formulation misconstrues the issue. As we see it, no waiver is in play here.

\*  \*  \*  \*  \*  \*

At any rate, even if we assume that we are dealing with an actual rather than an ersatz waiver, the waiver is permissible. Congress passed ERISA in part to protect the rights of employees who choose to participate in welfare benefit plans. *See* 29 U.S.C. § 1001; *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955–56, 103 L.Ed.2d 80 (1989). To achieve that end, the statute establishes a private right of action for employees who allege that a plan administrator wrongfully denied a claim for benefits due under the provisions of the plan. See 29 U.S.C. § 1132(a). But Congress did not go so far as to prohibit an employee from waiving her right to participate in an employee welfare benefit plan. *See Rodriguez–Abreu,* 986 F.2d at 587; *Finz v. Schlesinger,* 957 F.2d 78, 81 (2d Cir.), cert. denied, 506 U.S. 822, 113 S.Ct. 72, 121 L.Ed.2d 38 (1992); *Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan,* 935 F.2d 1360, 1364–66 (2d Cir.1991); *Lumpkin v. Envirodyne Indus., Inc.,* 933 F.2d 449, 455 (7th Cir.), cert. denied, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991); *Leavitt v. Northwestern Bell Tel. Co.,* 921 F.2d 160, 161–62 (8th Cir.1990).

*Smart,* 70 F.3d at 180–1; *Rivera–Flores,* 112 F.3d at 11–2.

To summarize, in exchange for enhanced retirement benefits, Hogan executed a Release pursuant to the terms of which he agreed not to sue Boston Gas. The Release is not void as contrary to public policy, nor does it violate his constitutional rights by denying him access to the federal courts.

## V. ORDER

For all the reasons stated, it is OR-DERED that Defendant's Motion To Dismiss (# 5) be, and the same hereby is, ALLOWED. Judgment shall enter for Boston Gas.