FILED
United States Court of Appeals
Tenth Circuit

March 30, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

SUSAN M. MILES,

     Plaintiff - Appellant,

v.

UNIFIED SCHOOL DISTRICT NO. 500,
KANSAS CITY, KANSAS; VALERIE
CASTILLO,

     Defendants - Appellees.

No. 20-3067
(D.C. No. 2:17-CV-02685-DDC-TJJ)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.
_____

Susan M. Miles appeals from a district court order that enforced her agreement

with her former employer, the Unified School District, to resign her employment and

release her discrimination claims. Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

BACKGROUND

Miles worked for the School District as a teacher at McKinley Elementary School in Kansas City, Kansas. Valerie Castillo was the school principal.

In April 2016, Miles fell in a classroom and suffered "occipital neuralgia and post-concussive syndrome." Aplt. App. at 14. She took leave under the Family and Medical Leave Act (FMLA) for the rest of the school year and retained an attorney, Kathleen Cossairt, to file a worker's compensation claim.

In August 2016, while still on FMLA leave, Miles received a paycheck from the School District. She was "almost sure" the paycheck was sent "in error," *id.* at 69, so she notified Cossairt and emailed a School District employee, asking whether the payment was correct and whether "future payments [would] come through worker's comp or . . . through the district," *id.* at 71. Three more paychecks were mistakenly sent to Miles by the end of September. She cashed all the checks and used the funds, which totaled $9,678.68, to pay bills and living expenses.

On October 26, one of the School District's attorneys, Fred Greenbaum, sent Cossairt a letter, requesting "credit for the payments if and when we resolve this matter." *Id.* at 70. Cossairt responded that the "overpayment of wages" concerned "employer/employee legal issues," and that she represented Miles only in "her work comp case." *Id.* at 78 (emphasis omitted).

On November 16, one of the District's other attorneys, Greg Goheen, wrote Miles about "the wage overpayments," demanding repayment within ten days, as she was "not working [in August and September] and had exhausted all available leave." *Id.* at 80. He

2

warned Miles that if she did not repay the money, her teaching contract might be terminated and "legal proceedings may be initiated." *Id.*

Miles apparently notified Cossairt, who said she would "try to negotiate a repayment" with the guidance of an employment-law attorney. *Id.* at 67; *see also id.* at 74. On November 21, Cossairt obtained an extension of the payment deadline to December 30, 2016.

In mid-December, Cossairt notified Goheen and Greenbaum that Miles had applied for a loan to repay the erroneously issued checks. On December 28, Cossairt provided an update, stating that she had "tried calling and emailing [Miles] with no response." *Id.* at 83. Attorney Robert Turner responded, warning Cossairt that the School District might "forward this matter to the District Attorney for handling if not resolved," and that "Miles' continued failure to pay" could result in the "termination of her teaching contract." *Id.* at 82. Turner offered a "repayment plan with a tender of [Miles's] resignation . . . and [a] release." *Id.* at 82. Cossairt forwarded Turner's email to Miles.

The December 30 deadline passed without repayment. On January 3, 2017, Miles spoke with Turner. According to Miles, Turner said she was being terminated and the School District was considering speaking to the District Attorney about criminal charges. Turner claimed he merely said that she could not return to work because of the repayment issue and that he had repeated the offer of a resignation and release.

On January 5, Miles met with Turner and repaid the School District. Turner gave Miles a "Mutual Release and Separation Agreement," *id.* at 52, for her to review. She

3

took the agreement to Cossairt, who reviewed it and suggested adding a worker's compensation release clause and a clarification about unemployment benefits. Turner agreed to the modifications and emailed a revised agreement to Miles.

On January 9, Miles met with Turner again and signed the agreement. In doing so, Miles felt she "had no other option . . . as [she] would otherwise face criminal charges." *Id.* at 75.

In December 2017, Miles sued the School District and Principal Castillo in federal court. She claimed the School District was liable for (1) disability discrimination and failure to accommodate, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101-12213; (2) discontinuing her healthcare coverage, in violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. §§ 1161-68, and (3) retaliatory discharge in violation of Kansas public policy, *see Pfeifer v. Fed. Exp. Corp.*, 304 P.3d 1226, 1231-32 (Kan. 2013). She also claimed that the School District and Principal Castillo were liable under the FMLA for discrimination and retaliation, in violation of 29 U.S.C. §§ 2601-2654.

The School District filed counterclaims based on Miles's execution of the release and separation agreement. That agreement provides, in relevant part:

> **Employee Status.** It is acknowledged by execution of this Agreement [that] Employee hereby voluntarily resigns her position with the Employer effective immediately . . . .
>       . . .
> **Releases by Employee and Employer.** . . . Employee . . . hereby fully releases and discharges Employer [and its agents and employees] from all rights, claims and actions which Employee has arising out of, relating to, or in connection with her employment with Employer and separation from her current position, as well as any claim in connection with any past, present

4

or future salary, expenses or other benefits of any kind whatsoever. By signing this Agreement, Employee releases . . . any such claims whether for discrimination, breach of contract, or any other claim, in law or equity, including but not limited to federal, state or local laws prohibiting discrimination . . . .

Aplt. App. at 52-53.

The district court stayed the employment-discrimination proceedings to consider the agreement's enforceability. After conducting a bench trial on the enforceability issue, the district court found the agreement enforceable, dismissed Miles's claims, and entered judgment for the School District.

On appeal, Miles argues that the district court erred by not setting aside the agreement due to fraud and by finding that she knowingly and voluntarily waived her federal employment claims.

## DISCUSSION
## I. Standard of Review

"Following a bench trial, we review the district court's factual findings for clear error and its legal conclusions de novo." *Acosta v. Foreclosure Connection, Inc.*, 903 F.3d 1132, 1134 (10th Cir. 2018) (internal quotation marks omitted). "We will reverse under the clear error standard only if the district court's finding is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

## II. Fraudulent Misrepresentation

Miles sought to set aside the release and separation agreement on the basis of Turner's statements regarding the School District referring her to the District Attorney. Although Kansas law allows setting aside a written contract due to fraud, there must be "an untrue statement of fact, known to be untrue by the party making it, which is made with the intent to deceive or recklessly made with disregard for the truth, where another party justifiably relies on the statement and acts to his or her injury and damage." *Albers v. Nelson*, 809 P.2d 1194, 1197-98 (Kan. 1991). "The existence of fraud is normally a question of fact," and it "must be proven by clear and convincing evidence." *Cmty. First Nat'l Bank v. Nichols*, 443 P.3d 322, 333 (Kan. App. 2019) (internal quotation marks omitted).

The district court rejected Miles's assertion of fraud, explaining that "Turner testified that the [School] District had followed this procedure—*i.e.*, referring the matter to the District Attorney—in earlier situations where an employee refused to return overpaid funds," and that Turner had good cause to believe there were grounds for criminal charges because Miles had missed the December 30 deadline and had not repaid the funds as of the date of Turner's statements. Aplt. App. at 100.

Miles argues that the district court failed to consider whether Turner recklessly made the statements, without regard for their truth. Specifically, she contends that

6

elements of the applicable criminal statute[1] are not satisfied by her conduct. But the issue is not whether Miles could ultimately be convicted under the statute. Rather, the issue for purposes of the fraud analysis centers on what Turner believed when making the statements. Turner testified he believed that Miles's failure to repay the money involved a crime. And Miles does not dispute that the School District had referred matters involving other employees to the District Attorney or that she had not repaid the funds as of January 3, 2017, when Turner made the last of his statements regarding a criminal referral. Consequently, Miles has not shown that Turner exhibited either deception or recklessness when referencing the possibility of criminal charges.[2]

---

[1] Section 21-5802(a) provides that the crime of "[t]heft of property lost, mislaid or delivered by mistake" involves obtaining control of another person's property by a person who:

    (1) Knows or learns the identity of the owner thereof;
    (2) fails to take reasonable measures to restore to the owner lost property, mislaid property or property delivered by a mistake; and
    (3) intends to permanently deprive the owner of the possession, use or benefit of the property.

Kan. Stat. Ann. § 21-5802(a).

[2] Miles also argues there was fraud because the School District was silent about the possibility of a criminal referral *after* she repaid the funds. She does not appear to have raised this argument below, and we generally do "not consider arguments raised for the first time on appeal." *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1266 n.3 (10th Cir. 2020). Moreover, she does not address the elements of fraud by silence in any detail. *See Stechschulte v. Jennings*, 298 P.3d 1083, 1097 (Kan. 2013) (setting out the five elements of a fraud-by-silence claim). We "will not consider issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." *Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283, 1291 (10th Cir. 2018) (ellipsis and internal quotation marks omitted)).

The district court did not clearly err in rejecting Miles's assertion of fraud.

### III.  Totality of the Circumstances

Although a plaintiff may agree to waive employment discrimination claims, that waiver must be knowing and voluntary.  *Torrez v. Pub. Serv. Co. of N.M., Inc.*, 908 F.2d 687, 689 (10th Cir. 1990).  To determine whether a waiver was knowing and voluntary, we consider the totality of circumstances, such as:

> (1) the clarity and specificity of the release language; (2) the plaintiff's education and business experience; (3) the amount of time plaintiff had for deliberation about the release before signing it; (4) whether [p]laintiff knew or should have known h[er] rights upon execution of the release; (5) whether plaintiff was encouraged to seek, or in fact received benefit of counsel; (6) whether there was an opportunity for negotiation of the terms of the Agreement; and (7) whether the consideration given in exchange for the waiver and accepted by the employee exceeds the benefits to which the employee was already entitled by contract or law.

*Id.* at 689-90.  "Waiver and release are affirmative defenses on which the employer bears the burden."  *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 12 (1st Cir. 1997) (considering a waiver and release of claims under the Americans with Disabilities Act); *see also Baum v. Great W. Cities, Inc., of N.M.*, 703 F.2d 1197, 1202 (10th Cir. 1983) (noting generally that release and waiver are affirmative defenses).

The district court referenced the *Torrez* factors and stressed the following circumstances.  Miles took the agreement and left Turner's office to consider it.  Turner imposed no time limit for that process, and he recommended that she consult an attorney.  Miles had Cossairt review the agreement, and she then proposed modifications, which the School District accepted.  Finally, the agreement specifically mentioned waiving federal

8

claims. Given these circumstances, the district court concluded that the School District demonstrated Miles knowingly and voluntarily waived her federal remedies.

On appeal, Miles focuses on *Torrez* factor seven, consideration. She argues that she received no payment or any other benefit for releasing her claims. The School District points out, however, that it promised (1) not to seek the suspension of Miles's teaching license, (2) to respond to employment inquiries about Miles by, among other things, stating that she voluntarily resigned; and (3) to make available to Miles "copies of any in-service credits." Aplt. App. at 84-85.[3]

Under Kansas law, these promises constitute consideration. "Consideration is defined as some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other." *Varney Bus. Servs., Inc. v. Pottroff*, 59 P.3d 1003, 1014 (Kan. 2002) (internal quotation marks omitted). It "need not be a thing of pecuniary value or reducible to such value," and "any benefit, profit or advantage flowing to the promisor which he would not have received but for the contract, . . . is sufficient consideration to support the promise." *Long v. Buehler*, 648 P.2d 270, 275 (Kan. App. 1982) (internal quotation marks omitted); *cf., e.g.*, *State ex rel. Ludwick v. Bryant*, 697 P.2d 858, 861 (Kan. 1985) (finding consideration in "a promise by the creditor to refrain from legal proceedings or an extension of time within which the debtor may pay the creditor"). Although Miles

---

[3] The district court said it was unable to assess, based on the available evidence, whether the consideration given by the School District exceeded benefits Miles was already entitled to receive. Similarly, in *Torrez*, this court did not weigh the consideration given by the employer. *See* 908 F.2d at 690.

disputes committing any "wrongdoing for the [School] District to report to any authority," Aplt. Opening Br. at 29, she does not dispute cashing four paychecks that she suspected had been erroneously issued and missing the repayment deadline. Because the School District promised not to reveal these issues to the Kansas Board of Education and prospective employers, Miles obtained a benefit. Miles does not address the School District's promise to provide copies of in-service credits. Nor does she contend she was already entitled to receive these benefits. In short, she has not demonstrated error based on the *Torrez* consideration factor.

Finally, Miles claims that the School "District's fraud left [her] confused about her rights." Aplt. Opening Br. at 30. But we have already determined Miles has not shown fraud. And as the district court succinctly observed, her consultation with Cossairt undercuts her argument that she was unable to understand the terms of the release and separation agreement. *See Pierce v. Atchison Topeka & Santa Fe Ry. Co.*, 110 F.3d 431, 438 (7th Cir. 1997) (stating that "the participation of an attorney in negotiating the release, will give rise to a presumption that the waiver was knowing and voluntary").

The district court did not clearly err in finding that Miles knowingly and voluntarily waived her federal employment claims.

## CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Timothy M. Tymkovich
Chief Judge

10