**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE ARNULFO ARIAS,
*Plaintiff-Appellant*,

v.

ANTHONY RAIMONDO,
*Defendant-Appellee.*

No. 15-16120

D.C. No.
2:13-cv-00904-TLN-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted March 14, 2017
San Francisco, California

Filed June 22, 2017

Before: Stephen S. Trott, Kim McLane Wardlaw,
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Trott

## SUMMARY[*]

### Labor Law

The panel reversed the district court's dismissal of a retaliation claim under the Fair Labor Standards Act.

The plaintiff alleged that after he filed suit against his employers in state court, the employers' attorney, acting as their agent, retaliated against him by planning for U.S. Immigration and Customs Enforcement to take him into custody at a scheduled deposition and then to remove him from the United States. The panel held that unlike the Fair Labor Standards Act's wage and hour provisions, its retaliation provisions apply to "any person" and do not require that a defendant be the plaintiff's employer. The panel remanded the case to the district court for further proceedings.

### COUNSEL

Christopher Ho (argued) and Stacy Villalobos, The Legal Aid Society – Employment Law Center, San Francisco, California; Esmeralda Zendejas and Blanca A. Bañuelos, California Rural Legal Assistance, Inc., Stockton, California; Michael L. Meuter, California Rural Legal Assistance, Inc., Salinas, California; for Plaintiff-Appellant.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Scott P. Dixler (argued) and Peder K. Batalden, Horvitz & Levy LLP, Burbank, California, for Defendant-Appellee.

Nora A. Preciado and Joshua T. Stehlik, National Immigration Law Center, Los Angeles, California; Jessica Hahn, National Immigration Law Center, Washington, D.C.; for Amicus Curiae National Immigration Law Center, Asian Americans Advancing Justice – Asian Law Caucus, Asian Americans Advancing Justice – Los Angeles, Bet Tzedek Legal Services, Centro Legal de la Raza, Farmworker Justice, Jobs with Justice, National Employment Law Project, New Orleans Workers' Center for Racial Justice, UCLA Center for Labor Research and Education, United Food and Commercial Workers International Union, and Worksafe Inc.

## OPINION

TROTT, Circuit Judge:

Can an employer's attorney be held liable for retaliating against his client's employee because the employee sued his client for violations of workplace laws? The district court's answer was no. We respectfully disagree.

We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291, and we reverse and remand.

### I

### Background

In 1995, plaintiff José Arnulfo Arias went to work as a milker for Angelo Dairy. Three Angelos owned and operated

the dairy: Luis, Maria, and Joe ("Angelos"). When the Angelos hired Arias, they did not complete and file a Form I-9 ("I-9") regarding his employment eligibility in the United States.

An I-9 is a document required by U.S. Citizenship and Immigration Services ("USCIS"), a component of our Department of Homeland Security. USCIS explains the purpose of the I-9 and process as follows:

> Form I-9 is used for verifying the identity and employment authorization of individuals hired for employment in the United States. All U.S. employers must ensure proper completion of Form I-9 for each individual they hire for employment in the United States. This includes citizens and noncitizens. . . . Employers must retain Form I-9 for a designated period and make it available for inspection by authorized government officers.

U.S. Citizenship and Immigration Services, *I-9, Employment Eligibility Verification*, https://www.uscis.gov/i-9 (last updated Jan. 23, 2017).

Instead of complying with federal law, the Angelos wielded it as a weapon to confine Arias in their employ. When Arias informed Luis Angelo in 1997 that he had been offered a position with another dairy, Luis "responded that if [Arias] left to work at the other dairy, [Luis] would report the other dairy to federal immigration authorities as an employer of undocumented workers," which Arias was. This threat caused Arias to forego his other employment opportunity and to remain with the Angelos.

In 2006, Arias sued Angelo Dairy in California state court. Arias alleged causes of action on behalf of himself and other employees under California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE § 17200 *et seq.*, for a variety of workplace violations, including failure to provide overtime pay and rest and meal periods. Later, he added a cause of action under California's Private Attorneys General Act of 2004 ("PAGA"), CAL. LAB. CODE § 2698 *et seq.* The Superior Court struck his representative claims in the UCL and PAGA causes of action. The Court of Appeal later issued a peremptory writ of mandate directing the Superior Court to vacate its order as to the PAGA cause of action. *See Arias v. Superior Court*, 63 Cal. Rptr. 3d 272 (Cal. Ct. App. 2007), *aff'd*, 46 Cal. 4th 969 (2009). The Superior Court then set a trial date of August 15, 2011.

## II

### The Plot Thickens

On June 1, 2011, ten weeks before the state court trial, the Angelos' attorney, Anthony Raimondo, set in motion an underhanded plan to derail Arias's lawsuit. Raimondo's plan involved enlisting the services of U.S. Immigration and Customs Enforcement ("ICE") to take Arias into custody at a scheduled deposition and then to remove him from the United States. A second part of Raimondo's plan was to block Arias's California Rural Legal Assistance attorney from representing him. This double barrel plan was captured in email messages back and forth between Raimondo, Joe Angelo, and ICE's forensic auditor Kulwinder Brar. Arias quoted these revealing exchanges in his current complaint:

23. On June 1, 2011, Defendant RAIMONDO emailed Immigration and Custom Enforcement ("ICE") Forensic Auditor Kulwinder Brar, an employee of the U.S. Department of Homeland Security. In this email, Defendant RAIMONDO supplied Brar with information about Plaintiff's identity, and asked Brar to "[l]et me know if there is anything that you can do. . . ."

24. On the same day, June 1, 2011, all parties to the 2006 Lawsuit attended a mediation in Stockton, California. The mediation was unsuccessful.

25. On June 14, 2011, Defendant RAIMONDO sent Joe Angelo a text message stating, "Immigration is trying to verify Arias [sic] status - let me know if you have any more info on him." Joe Angelo responded by providing Defendant RAIMONDO with Plaintiff's driver's license number. . . .

26. On June 15, 2011, Defendant RAIMONDO emailed to ICE Auditor Brar the information Joe Angelo had provided. In doing so, Defendant RAIMONDO stated, "I hope this helps. [Plaintiff] will be attending a deposition next week. If there is an interest in apprehending him, please let me know so that we can make the necessary arrangements. . . ."

27. On June 16, 2011, ICE Auditor Brar responded to Defendant RAIMONDO's email

of June 1, 2011, stating that "[b]ased on our records he [Plaintiff] has no legal status. We will be forwarding this information to ERO [Enforcement and Removal Operations] and your contact information if they want to proceed with this matter. . . ."

28. Defendant RAIMONDO replied to ICE Auditor Brar, asking her to "[p]lease let ERO know that they can expect our full cooperation and assistance", and to "let me know if there is anything I can do to be of assistance to you." Brar responded, "No problem and we will get your contact information as soon as contact is made."

Arias's current complaint also alleged the impact of Raimondo's actions on him and his case, and Raimondo's pattern and practice of similar conduct in other cases:

29. Plaintiff became aware on June 22, 2011 that Defendant had provided information concerning Plaintiff to the immigration authorities. Fearing that he would be deported and separated from his family, Plaintiff suffered anxiety, mental anguish, and other emotional distress from Defendant's retaliatory action.

30. On July 11, 2011, one month before trial, the parties participated in a settlement conference. In lieu of proceeding to trial on the wage and hour claims comprised within the 2006 Lawsuit, Plaintiff entered into a

settlement and release of those claims, due in substantial part to the threat of deportation created by Defendant's communications with ICE.

31. On information and belief, Defendant RAIMONDO's actions against Plaintiff are reflective of and consistent with his pattern and practice of retaliating against employees who assert their workplace rights. In fact, Defendant RAIMONDO has stated in a declaration filed in a court action that it is his practice to investigate the immigration status of plaintiffs who have brought legal claims against his clients. . . .

32. On at least five additional occasions, and consistent with his pattern and practice, Defendant RAIMONDO has contacted ICE with respect to employees who have asserted their workplace rights against employers whom Defendant RAIMONDO has represented, and has offered his assistance to ICE in apprehending those employees. . . .

33. On May 2, 2013, Defendant RAIMONDO confirmed the above pattern and practice in an email he sent to Thomas Hester of the Office of Inspector General at the Legal Services Corporation, in which he stated, "*The time when I have had litigants deported, I have always simply taken action rather than make any threats. The attorneys find out when their clients are already gone.*"

## III

### Arias's Complaint

On May 8, 2013, Arias filed this lawsuit against Angelo Dairy, the Angelos, and Raimondo in the Eastern District of California. Arias alleged that the defendants violated section 215(a)(3) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[1]

Arias's theory of his case is that Raimondo, acting as the Angelos' agent, retaliated against him in violation of section 215(a)(3) for filing his original case against Raimondo's clients in state court . Raimondo's sole legal defense is that because he was never Arias's actual employer, he cannot be held liable under the FLSA for retaliation against someone who was never his employee.

Angelo Dairy and its owners settled their part of this case at the early stages of its existence.

## IV

### A.

### The District Court's Dismissal

Notwithstanding section 215(a)(3)'s reference to "any person," section 203(a)'s inclusion of a legal representative as a "person," and section 203(d)'s plain language defining "employer," the district court granted Raimondo's motion to

---

[1] Arias's current complaint also contains claims for intentional infliction of emotional distress and unfair competition.

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court did so without the benefit of oral argument, concluding that because Arias "ha[d] not alleged that [Raimondo] exercised any control over [his] employment relationship," Raimondo as a matter of law could not be Arias's employer.

## B.

## Standard of Review

We review de novo a Rule 12(b)(6) dismissal for failure to state a claim, and we take all allegations of material fact as true, construing them in the light most favorable to the nonmoving party, here Arias.

## V

## Discussion

Section 215(a)(3), an anti-retaliation provision, makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . under or related to this chapter." The FLSA defines the term "person" to include a "legal representative." *Id.* § 203(a). Section 216(b) in turn creates a private right of action against any "employer" who violates section 215(a)(3); and the FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* §§ 203(d), 216(b).

Controversies under FLSA sections 206 and 207 that require a determination of primary workplace liability for

wage and hour responsibilities and violations, on one hand, and controversies arising from retaliation against employees for asserting their legal rights, on the other, are as different as chalk is from cheese. Each category has a different purpose. It stands to reason that the former relies in application on tests involving economic control and economic realities to determine who is an employer, because by definition it is the actual employer who controls substantive wage and hours issues.

Retaliation is a different animal altogether. Its purpose is to enable workers to avail themselves of their statutory rights in court by invoking the legal process designed by Congress to protect them. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (the "primary purpose of antiretaliation provisions" is to "[m]aintai[n] unfettered access to statutory remedial mechanisms").

This distinctive purpose is not served by importing an "economic control" or an "economic realities" test as a line of demarcation into the issue of who may be held liable for retaliation. To the contrary, the FLSA itself recognizes this sensible distinction in section 215(a)(3) by prohibiting "any person" – not just an actual employer – from engaging in retaliatory conduct. By contrast, the FLSA's primary wage and hour obligations are unambiguously imposed only on an employee's de facto "employer," as that term is defined in the statute. Treating "any person" who was not a worker's actual employer as primarily responsible for wage and hour violations would be nonsensical.

The district court based its decision on precedent pertaining to whether a person was an employer for purposes of the FLSA's substantive economic provisions, *i.e.*, those

involving wages and hours, etc., not section 215(a)(3) retaliation. *See Boucher v. Shaw*, 572 F.3d 1087, 1090–93 (9th Cir. 2009) (holding that an employer's individual managers were personally liable under the FLSA for unpaid wages, pursuant to an "economic control" test); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983) (holding that state and county agencies were employers of in-home chore workers who alleged violations of minimum wage provisions).

The district court also relied on *Dellinger v. Science Applications International Corp.*, 649 F.3d 226 (4th Cir. 2011). However, *Dellinger* is inapposite because Dellinger was never officially hired by the defendant. All *Dellinger* stands for is that "the FLSA gives an employee the right to sue only his or her current or former employer and that a prospective employee cannot sue a *prospective* employer for retaliation." *Id.* at 227 (emphasis added). In other words, a person who never worked for the employer – in our case Angelo Dairy – does not fit anywhere in the FLSA. *See id.* at 230 n.2. Because Angelo Dairy was Arias's actual employer, Arias is indisputably an employee, as section 215(a)(3) uses that term.

These cases and the others the district court relied on are not in tension with our decision. The cases are simply inapposite in the context of an allegation of retaliation.

The Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006), supports our analysis, albeit in a different context: Title VII of the Civil Rights Act of 1964's ("Title VII") anti-retaliation provision, 42 U.S.C. § 2000e-3(a). *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (recognizing "the

almost uniform practice of courts in considering the authoritative body of Title VII case law when interpreting the comparable provisions of other federal statutes" and noting in particular that "courts have looked to Title VII cases in interpreting the FLSA" (citations omitted)).

The issue in *Burlington* was whether the actions and harms forbidden by Title VII's anti-retaliation provision are confined to those that are related to employment or occur at the workplace. 548 U.S. at 57. Focusing on differences in language and purpose between the substantive provisions of Title VII and the anti-retaliation provision, the Court held that Title VII's anti-retaliation provision is not so confined.

> There is strong reason to believe that Congress intended the differences that its language suggests, for the two provisions differ not only in language but in purpose as well. The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, *i.e.*, their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, *i.e.*, their conduct.

To secure the first objective, Congress did not need to prohibit anything other than employment-related discrimination. The substantive provision's basic objective of "equality of employment opportunities" and the elimination of practices that tend to bring about "stratified job environments," would be achieved were all employment-related discrimination miraculously eliminated.

But one cannot secure the second objective by focusing only upon employer actions and harm that concern employment and the workplace. Were all such actions and harms eliminated, the antiretaliation provision's objective would *not* be achieved. An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm *outside* the workplace. . . .

Thus, purpose reinforces what language already indicates, namely, that the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment. . . .

In any event, as we have explained, differences in the purpose of the two provisions remove any perceived "anomaly," for they justify this difference of interpretation. Title VII depends for its enforcement upon the cooperation of

employees who are willing to file complaints and act as witnesses. "Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances." Interpreting the antiretaliation provision to provide broad protection from retaliation helps ensure the cooperation upon which accomplishment of the Act's primary objective depends.

For these reasons, we conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm. We therefore reject the standards applied in the Courts of Appeals that have treated the antiretaliation provision as forbidding the same conduct prohibited by the antidiscrimination provision and that have limited actionable retaliation to so-called "ultimate employment decisions."

*Id.* at 63–67 (citations omitted).

In our case, the difference in reach between FLSA's substantive economic provisions and its anti-retaliation provision is unmistakable. The wage and hours provisions focus on de facto employers, but the anti-retaliation provision refers to "any person" who retaliates. *See* 29 U.S.C. § 215(a)(3). In turn, section 203(d) extends this concept to "any person acting directly or indirectly in the interest of an employer in relation to an employee." *See Id.* § 203(d).

Thus, Congress clearly means to extend section 215(a)(3)'s reach beyond actual employers. Raimondo's activity in this case on behalf of his clients illustrates the wisdom of this extension.

Although decided before Congress amended the FLSA in 1977 to explicitly create a private right of action for violations of section 215(a)(3), the Third Circuit's opinion in *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37 (3d Cir. 1943) – in which a private right of action for such violations was implied – reinforces our interpretation of this statute. The Third Circuit rejected a union's contention that it could not be liable under section 215(a)(3) for retaliation against its members because the union was not the members' actual employer. The court said,

> Legislative intent must be drawn from the Act as a whole. Those portions of the Act . . . relating to wages and to hours *do apply only to employers*. The prohibitions expressed in Section 15, 29 U.S.C.A. § 215, however, are applicable "to any person[.]" Section 15(a)(3) makes it unlawful for "any person" . . . whether or not he is an employer, to discriminate against any employee.

*Id.* at 38 (emphasis added).

In *Sapperstein v. Hager*, 188 F.3d 852, 856–57 (7th Cir. 1999), the Seventh Circuit interpreted and applied this "any person" distinction in a manner that supports our analysis. The court concluded that section 215(a)(3) provides an "alternative basis for subject matter jurisdiction" where the employer's gross annual sales amount appeared to fall short

of the jurisdictional amount required to bring the employer within the purview of the FLSA's wage and hour provisions set forth in sections 206 and 207. The court held that:

> Congress made it illegal for any person, not just an "employer" as defined under the statute, to retaliate against any employee for reporting conduct "under" or "related to" violations of the federal minimum wage or maximum hour laws, whether or not the employer's conduct does in fact violate those laws. . . . Moreover, "the remedial nature of the statute further warrants an expansive interpretation of its provisions. . . ."

*Id.* at 857 (second omission in original) (quoting *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999)).

## VI

### Conclusion

The FLSA is "remedial and humanitarian in purpose. We are not here dealing with mere chattels or articles of trade but with the rights of those who toil, of those who sacrifice a full measure of their freedom and talents to the use and profit of others . . . . Such a statute must not be interpreted or applied in a narrow, grudging manner." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944).

Accordingly, we conclude that Arias may proceed with this retaliation action against Raimondo under FLSA sections 215(a)(3) and 216(b). Raimondo's behavior as alleged in Arias's complaint manifestly falls within the purview, the

purpose, and the plain language of FLSA sections 203(a), 203(d), and 215(a)(3).

Our interpretation of these provisions is limited to retaliation claims. It does not make non-actual employers like Raimondo liable in the first instance for any of the substantive wage and hour economic provisions listed in the FLSA. As illustrated by the Court's opinion in *Burlington*, the substantive provisions of statutes like Title VII and the FLSA, and their respective anti-retaliation provisions, stand on distinctive grounds and shall be treated differently in interpretation and application. Ultimately a retaliator like Raimondo may become secondarily liable pursuant to section 216(b) for economic reparations, but only as a measure of penalties for his transgressions.

**REVERSED and REMANDED** for further proceedings.