FILED
United States Court of Appeals
Tenth Circuit

August 15, 2018

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

R. ALEXANDER ACOSTA, Secretary of
Labor, United States Department of Labor,

     Plaintiff - Appellee,

v.

FORECLOSURE CONNECTION, INC.;
JASON WILLIAMS,

     Defendants - Appellants.

No. 17-4111

_____

**Appeal from the United States District Court
for the District of Utah
(D.C. No. 2:15-CV-00653-DAK)**
_____

David E. Ross II, David E. Ross II, L.C., Park City, Utah, for Defendants-Appellants.

Sarah Kay Marcus, Senior Attorney (Kate S. O'Scannlain, Solicitor of Labor, Jennifer S.
Brand, Associate Solicitor, and Paul L. Frieden, Counsel for Appellate Litigation, with
her on the briefs), U.S. Department of Labor, Washington, D.C., for Plaintiff-Appellee.
_____

Before **TYMKOVICH**, Chief Judge, **LUCERO** and **HARTZ**, Circuit Judges.
_____

**LUCERO**, Circuit Judge.
_____

     Jason Williams and Foreclosure Connection, Inc. ("FCI") appeal the district

court's judgment in favor of the Secretary of Labor. Exercising jurisdiction under 28

U.S.C. § 1291, we affirm.

# I

FCI is a Utah company that buys real estate, renovates homes, and rents or resells properties. Williams is the manager and part owner of FCI. He is responsible for hiring and firing decisions. Jack Erickson is FCI's foreman. He assigns work to construction workers at the company's properties pursuant to Williams' instructions.

Mychal Barber Sr. and his teenaged son, Mychal Scott Barber Jr., began doing construction work for FCI in the summer of 2015. The Barbers became dissatisfied with working conditions at FCI, and in particular, with the company's failure to pay overtime wages. On July 7, 2015, they submitted a complaint to the Wage and Hour Division of the Department of Labor ("DOL"), alleging that FCI's failure to pay overtime wages violated the Fair Labor Standards Act ("FLSA").

The following morning, on July 8, Erickson told the Barbers not to report to work because there was not enough work for them to do. Later that day, DOL investigator Sheffield Keith met with Williams at FCI's offices. Keith requested certain records, including information on FCI's employees. Williams responded that FCI did not have any employees, and that all of its workers were independent contractors. Later that night, the Barbers called Erickson, who told them they were terminated. Erickson explained that Williams blamed the Barbers for reporting the company to DOL.

On July 15, an employee surreptitiously recorded a meeting Williams held with his workers. Williams instructed the group to refuse to cooperate in DOL's investigation. He also circulated independent contractor agreements to the workers,

requested that they sign the agreements but leave them undated, and told them to claim they could not remember when they signed. FCI submitted contractor agreements to DOL, including an agreement for Barber Sr. with what appeared to be a forged signature.

In September 2015, DOL filed a complaint alleging that FCI had obstructed its investigation and retaliated against its employees, including the Barbers. Defendants consented to the entry of a preliminary injunction barring any additional retaliation or obstruction. Following a bench trial, the district court ruled in favor of DOL. It imposed a permanent injunction, awarded $3,530.23 in back pay to Barber Jr. plus an equal amount of liquidated damages, and awarded $80,992.55 in back pay to Barber Sr. plus an equal amount of liquidated damages. Defendants timely appealed.

## II

Following a bench trial, "we review the district court's factual findings for clear error and its legal conclusions de novo." Keys Youth Servs., Inc. v. City of Olathe, 248 F.3d 1267, 1274 (10th Cir. 2001). We will reverse under the clear error standard only if the district court's finding "is without factual support in the record or if, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." Id. (quotations omitted).

### A

Defendants argue that DOL failed to demonstrate FCI was an enterprise engaged in commerce. Under FLSA, employees are entitled to overtime pay if they work more than forty hours per week and are "employed in an enterprise engaged in

3

commerce." 29 U.S.C. § 207(a)(1). "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." § 203(b).

However, the anti-retaliation provision of FLSA does not refer to an enterprise engaged in commerce. It states that "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint . . . related to [FLSA]." § 215(a)(3) (emphasis added). A person is defined as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." § 203(a).

Several circuit courts have thus concluded that FLSA's prohibition on retaliation applies regardless of whether an employer qualifies as an enterprise engaged in commerce. The Third Circuit held that although the portions of FLSA "relating to wages and to hours do apply only to employers," the "prohibitions expressed in [§ 215] . . . are applicable to any person." Bowe v. Judson C. Burns, Inc., 137 F.2d 37, 38 (3d Cir. 1943) (quotation omitted). Commenting that FLSA "is carefully drawn and every term is used as a term of art," that court noted that the wage and hour provisions consistently use "employer" but the anti-retaliation and willful violation sections always use "person." Id.; see also id. at 39 ("The congressional intent is very plain and the pattern of the statute is perfect.").

Similarly, in Meek v. United States, 136 F.2d 679 (6th Cir. 1943), the Sixth Circuit upheld the criminal conviction under FLSA of a defendant who claimed he was no longer an employer at the time an employee was fired. Id. at 679. The court

4

held that "the differentiation between the prohibitions in other sections of the Act directed to the 'employer,' and those here directed to 'any person,' is significant of the intent of the Congress. The language is clear and conforms to the pattern of the Act." Id. at 680. And in Wirtz v. Ross Packaging Co., 367 F.2d 549 (5th Cir. 1966), the Fifth Circuit held that "the clear and unambiguous language" of FLSA, which contains the terms "any employee" and "any person" in its anti-retaliation provision, does not require that either party "be engaged in activities covered by the Act's wage and hour provisions in order for the strictures against discriminatory discharge to be invoked." Id. at 550-51.

More recent decisions are in accord. In Sapperstein v. Hager, 188 F.3d 852 (7th Cir. 1999), the court held that a retaliation claim could go forward even though the employer did not qualify as an enterprise. Id. at 856. The court explained that, even if an employee's complaint turned out not to be a violation of FLSA, the anti-retaliation provision does not require an actual violation to be proved. Id. at 856-57. It provided the following policy rationale for this rule:

> Determining whether there is an actual violation can mislead even an experienced district court, and a sensible employee who knew he had to be right to enjoy whistleblower protection would think twice about reporting conduct which might turn out to be lawful. Congress instead wanted to encourage reporting of suspected violations by extending protection to employees who filed complaints, instituted proceedings, or indeed, testified in such proceedings, as long as these concerned the minimum wage or maximum hour laws.

Id. at 857.

5

Finally, in <u>Arias v. Raimondo</u>, 860 F.3d 1185 (9th Cir. 2017), the Ninth Circuit explained that the wage and hour sections of FLSA sensibly apply only to employers because only employers control wages. <u>Id.</u> at 1189. The court contrasted FLSA's anti-retaliation provision, which Congress enacted "to enable workers to avail themselves of their statutory rights in court by invoking the legal process designed by Congress to protect them." <u>Id.</u> at 1190. That purpose would not be served by limiting liability to employers. Because "the difference in reach between FLSA's substantive economic provisions and its anti-retaliation provision is unmistakable . . . , Congress clearly means to extend section 215(a)(3)'s reach beyond actual employers." <u>Id.</u> at 1191-92.

We are persuaded by the foregoing authorities and hold that the anti-retaliation provisions of FLSA apply to any person regardless of whether that person is an enterprise engaged in commerce.[1] Accordingly, we reject defendants' first claim of error.

**B**

Defendants also contend that the district court clearly erred in finding a causal connection between the Barbers' protected activity and their terminations. They

---

[1] Although defendants cite the Commerce Clause, U.S. Const., art. I, § 8, cl. 3, they do not advance any substantive constitutional argument on this issue, instead dedicating their opening brief to statutory analysis. We therefore do not address any constitutional argument regarding the scope of FLSA's application to the events at issue in this case. <u>See</u> <u>United States v. Gordon</u>, 710 F.3d 1124, 1150 (10th Cir. 2013) (arguments are waived if they "are presented in a perfunctory and conclusory fashion" because "we are rightly hesitant to definitively opine on . . . legally significant issues when they have received . . . cursory treatment").

point to the district court's reference to July 7 as "the last day before the Barbers were fired," in arguing that the Barbers were terminated on the morning of July 8, before Williams was aware that DOL had been contacted. "As we have explained, an employer's action against an employee cannot be because of that employee's protected opposition unless the employer knows the employee engaged in protected opposition." Zokari v. Gates, 561 F.3d 1076, 1081 (10th Cir. 2009) (quotation, brackets, and emphasis omitted).

However, Barber Jr. testified that there were two interactions with Erickson on July 8. In the morning, Erickson told them not to come in that day because there was no work. They called back "later that night" to find out if they should report the following day and Erickson "said that [the Barbers] weren't working anymore" and that the Barbers "were terminated." We thus interpret the district court's statement as finding the termination occurred on July 8, after Keith met with Williams.

Defendants also argue that DOL failed to establish pretext. They point to a recorded call in which Erickson states that the Barbers were fired for making a report to city inspectors. But a plaintiff may prove FLSA retaliation "either through the use of direct evidence or by showing that [the employer's] proffered non-retaliatory reasons for terminating him were pretextual." Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1396 (10th Cir. 1997). The record contains direct evidence that the Barbers were fired because of their complaints to DOL: Barber Jr. testified that Erickson told him that Williams blamed them for the report during the phone call in which they were terminated. In any event, the district court could permissibly infer

pretext because of the inconsistent reasons provided for the terminations.  See

Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997).[2]

## III

**AFFIRMED**.

---

[2] Defendants did not challenge the DOL's authority to seek back pay and liquidated damages for retaliation in their briefing to this court or in the district court. See 29 U.S.C. §§ 216, 217.  Accordingly, any such challenges are waived.  See United States v. Porter, 405 F.3d 1136, 1141-42 (10th Cir. 2005) ("We do not consider issues not presented to the district court, and they are deemed waived."); Coleman v. B-G Maint. Mgmt. of Colo., Inc., 108 F.3d 1199, 1205 (10th Cir. 1997) ("Issues not raised in the opening brief are deemed abandoned or waived.").