**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| ZOE HOLLIS, individually and on behalf of all others similarly situated, | No. 24-2464 |
| | D.C. No. 3:21-cv-00965-YY |
| *Plaintiff - Appellant*, | |
| v. | |
| R&R RESTAURANTS, INC, an Oregon corporation doing business as Sassy's; STACY MAYHOOD; IAN HANNIGAN; FRANK FAILLACE, | OPINION |
| *Defendants - Appellees*. | |

Appeal from the United States District Court
for the District of Oregon
Michael H. Simon, District Judge, Presiding

Argued and Submitted July 8, 2025
Seattle, Washington

Filed November 18, 2025

Before: M. Margaret McKeown, Richard A. Paez, and
Gabriel P. Sanchez, Circuit Judges.

Opinion by Judge Paez

**SUMMARY**[*]

**Fair Labor Standards Act**

The panel reversed the district court's summary judgment in favor of defendants on a retaliation claim under the Fair Labor Standards Act and remanded for further proceedings.

Zoe Hollis, a dancer at a Portland strip club called Sassy's, sued the club's owners and managers under the FLSA for misclassifying its dancers as independent contractors and violating corresponding wage and hours provisions. After Hollis filed the complaint, Frank Faillace, a partner and manager of both Sassy's and another club called Dante's, canceled an agreement for Hollis to perform at a weekly variety show at Dante's. Hollis then amended the complaint to allege that Faillace's decision to cancel the performance at Dante's constituted retaliation in violation of the FLSA. The district court granted summary judgment on the ground that to have a private right of action for retaliation, Hollis must have been employed at Dante's when Faillace canceled the scheduled performance.

The panel held that, while the FLSA requires an underlying employment relationship, it covers retaliation committed by the employer or "any person acting directly or indirectly in the interest of an employer in relation to an employee." Thus, the alleged retaliator need not be the actual employer, and the plaintiff need not have been employed by the actual employer when the retaliation

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

occurred. The panel held that, in the context of retaliation, the phrase "indirectly in the interest of an employer" does not require an agency relationship with the actual employer or the conferral of any direct benefit to the employer.

The employee-employer relationship at issue was the one between Hollis and Sassy's. The panel left it to the district court to determine on remand whether Hollis's work at Sassy's satisfied the "economic realities" test for establishing employee status. The panel held that in ascertaining whether Hollis was an employee of Sassy's, it was not relevant that any FLSA wage and hour claims based on the alleged misclassification were time-barred. The panel also left it to the district court or trier of fact to determine on remand whether Faillace's acts in canceling the scheduled performance and barring Hollis from future work at Dante's constituted retaliation.

**COUNSEL**

John P. Kristensen (argued), Kristensen LLP, Santa Barbara, California; S. Amanda Marshall, S. Amanda Marshall LLC, Portland, Oregon; for Plaintiff-Appellant.

Anthony D. Kuchulis (argued) and Sara M. Dueno, Dunn Carney LLP, Portland, Oregon; for Defendants-Appellees.

**OPINION**

PAEZ, Circuit Judge:

Zoe Hollis, a dancer at a Portland strip club called Sassy's, sued the club's owners and managers under the Fair Labor Standards Act ("the FLSA" or "the Act") for misclassifying its dancers as independent contractors and violating corresponding wage and hour provisions. After Hollis filed the complaint, Frank Faillace—a partner and manager of both Sassy's and another club called Dante's—canceled an agreement for Hollis to perform at a weekly variety show at Dante's. In emailing Hollis to cancel her performance, Faillace cited the suit against Sassy's, explaining his intent to protect Dante's from legal liability. After receiving Faillace's email, Hollis amended the complaint to allege that Faillace's decision to bar Hollis from performing at Dante's constituted retaliation in violation of the FLSA.

The district court granted summary judgment to the defendants, reasoning that the FLSA only provides a private right of action for retaliation committed by current employers. In other words, the district court concluded that Hollis must have been employed by Dante's when Faillace canceled Hollis's scheduled performance to have a cause of action for retaliation. We reverse.

In *Arias v. Raimondo*, we drew on the Act's broad language and remedial purpose to hold that the plaintiff could bring an FLSA retaliation claim against his former employer's attorney for seeking to have him deported to thwart his wage and hour lawsuit against the employer. 860 F.3d 1185, 1192 (9th Cir. 2017). In this opinion, we further clarify the boundaries of the FLSA's private right of action

for retaliation. While the Act requires an underlying employment relationship, it covers retaliation committed by the employer or "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. §§ 215(a)(3), 216(b), 203(d). In the context of retaliation, the phrase "indirectly in the interest of an employer" does not require an agency relationship with the actual employer or the conferral of any direct benefit to the employer.

## I.

Because we review the district court order granting the defendants' summary judgment motion, we recount the facts in the light most favorable to Hollis. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 662 (9th Cir. 2021).

Hollis prefers the gender-neutral pronouns "they" and "them," so we follow that preference throughout this opinion. Hollis danced at Sassy's approximately three to five times a week from June 2017 until March 2019, pursuant to a contract purporting to designate them an independent contractor. No special training, licenses, experience, or skills were required to dance at Sassy's, although dancers briefly auditioned for a manager. A manager provided Hollis with a weekly schedule every Sunday, based partly on Hollis and the other dancers' interest and availability. Hollis was allowed to work for other clubs during the same period and did so for a couple of months.

Sassy's controlled customer entry, set minimum prices for dances, required dancers to rotate between the stage and the floor, and hired and managed DJs, bartenders, and bouncers. Sassy's controlled the music, although Hollis and the other dancers could make selections from a list of pre-approved songs when no DJ was present. Sassy's required

dancers on stage to remove their clothing in a specified order: "teasing" during the first song, removing their top during the second, and removing their bottoms during the third. Sassy's set minimum prices that dancers could charge for certain dances and required customers to tip dancers on stage at least one dollar, although the one-dollar rule was often not enforced.

Hollis's labor at Sassy's was governed by a robust set of rules, violations of which could result in termination. For example, dancers had to maintain their hair, makeup, and physical appearance to certain standards, and Hollis's schedule was reduced because they chose to wear their natural hair instead of a wig. Other rules concerned dancers' interactions with customers, requiring that any issues or disputes be handled only by security or bar staff, as well as dancers' handling of money, requiring them to keep one-dollar bills in bundles of twenty.

Hollis was required to pay "house fees" to Sassy's for each shift. Hollis and the other dancers also tipped the club bartenders, DJs, and bouncers, who would "make working [there] miserable" otherwise. Hollis, however, did not pay for any dance poles, facilities, utilities, advertising or other bills for Sassy's, nor did Hollis have management responsibilities.

On two occasions, Hollis also performed a pole dance at a weekly variety showcase called "Sinferno Cabaret," hosted by an adult entertainment club called Dante's. On June 22, 2021, Hollis received an email confirming their scheduled slot to perform at Dante's for a third time, on July 25. The email also solicited Hollis's requests for future performance slots at Dante's.

Six days later, Hollis filed a collective action under 29 U.S.C. § 216(b) against R&R Restaurants, Stacy Mayhood, and Ian Hannigan—the business entity that operates Sassy's and two of its owner-managers—alleging that Sassy's misclassified its dancers as independent contractors instead of employees to avoid paying minimum wage and overtime. The complaint also alleged that the defendants were taking illegal kickbacks in the form of "house fees" and unlawfully retaining dancers' tips.

On July 19, 2021, Faillace emailed Hollis to cancel their scheduled performance at Dante's, citing the lawsuit against Sassy's. In pertinent part, the email read:

> As you may or may not remember, I am one of the partners in Sassy's. A few days ago we were served papers there for a class action lawsuit, of which you are the primary plaintiff.
>
> That makes things complicated. Especially since it is regarding the claim of being an employee versus an independent contractor as stated in the contract with Sassy's. Since you would be performing at Dante's as an independent contractor, that puts another business that I'm a partner in at risk for a lawsuit. Therefore, we have been strongly advised to not have you perform at Dante's.

The email goes on to explain that the decision was unrelated to Hollis's activism concerning racial and cultural bias at strip clubs. Rather, Faillace expressed "shar[ing] most of [Hollis's] goals." "But when it comes to performers being independent contractors versus employees, we disagree." He

wrote that "[t]his is a serious lawsuit [for] which the legal bills alone . . . could easily put Sassy's (or any of our other clubs) out of business." Finally, he wrote, "I'm sorry that you won't be able to perform at Dante's, and I'm sorry that this has ended up this way."

Weeks later, Hollis amended the complaint. The First Amended Complaint ("FAC") added Faillace to the misclassification and wage-related claims at Sassy's and alleged that Faillace's cancellation of Hollis's scheduled performance at Dante's constituted retaliation in violation of the FLSA and Oregon state law. The defendants filed a motion for summary judgment and, after the district court initially held the motion in abeyance to accommodate discovery disputes, filed a renewed motion for summary judgment.

On November 2, 2023, a magistrate judge issued findings and recommendations on the defendants' summary judgment motion. He found that Hollis's wage-related claims were barred by the applicable statute of limitations. He also concluded that although Hollis's FLSA retaliation claim against Faillace was timely, it "fail[ed] as a matter of law" because undisputed evidence showed that Hollis was "not an employee of Dante's or Faillace's at the time of the alleged retaliation." Lastly, because there were no other remaining federal-law claims, the magistrate judge recommended dismissing the state-law retaliation claims without prejudice.

On March 26, 2024, the district court adopted the magistrate judge's findings and recommendations in full and granted the defendants' summary judgment motion. Notably, the district court adopted the magistrate judge's determination that Hollis could not bring a successful

retaliation claim without establishing "that [they were] an employee of Dante's." On appeal, Hollis challenges only the district court's decision on the FLSA retaliation claim.

## II.

We review de novo a district court's grant of summary judgment. *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1041 (9th Cir. 2017). "Summary judgment is appropriate only when 'there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id*. (quoting Fed. R. Civ. P. 56(a)). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## III.

We first hold that the district court erred in requiring Hollis to establish that an employee-employer relationship existed with Dante's at the time of the alleged retaliation. The defendant in an FLSA retaliation action need not be the actual employer and the plaintiff need not have been employed by the actual employer when the retaliation occurred. *See Arias*, 860 F.3d at 1191–92. Rather, the defendant need only have "act[ed] . . . indirectly in the interest of an employer in relation to an employee" in committing the alleged retaliation. 29 U.S.C. § 203(d). Faillace's undisputed conduct satisfies this requirement.

Next, an FLSA retaliation claim requires an underlying employment relationship, *see id*. §§ 215(a)(3), 216(b) (referencing "an employee"), but the employee-employer relationship at issue here is the one between Hollis and Sassy's, over which Hollis filed this lawsuit and was subsequently subjected to retaliation. We leave it to the

district court to determine on remand whether Hollis's work at Sassy's satisfied our "economic realities" test for establishing employee status. *See, e.g.*, *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997). In ascertaining whether Hollis was an employee of Sassy's, it is not relevant that any FLSA wage and hour claims based on the alleged misclassification are time-barred.

Finally, we leave to the district court or trier of fact to determine on remand whether Faillace's acts in canceling Hollis's scheduled performance and barring them from future work at Dante's constituted retaliation. The defendants argue that Faillace was merely protecting his business interests at Dante's from a similar lawsuit by Hollis, but this argument fails. An FLSA defendant cannot be allowed to take retaliatory actions against an FLSA plaintiff to limit legal liability created by the defendant's alleged violations of the Act.

We discuss each of these issues below.

## A.

The district court concluded that a claim under the FLSA retaliation provision, 29 U.S.C. § 215(a)(3), requires the plaintiff to have been employed by the retaliator at the time of the retaliation. Not so. Interpreting § 215(a)(3) in *Arias*, we held that an employee may bring a retaliation claim (1) against individuals other than the actual employer (2) for retaliatory conduct that occurred after the employment terminated. *See* 860 F.3d at 1192. Faillace argues that he nonetheless cannot be held liable because he was not acting as an agent of Sassy's in terminating the agreement for Hollis to perform at Dante's. But the statute only requires Faillace to have been acting "indirectly in the interest of" Sassy's. *See* 29 U.S.C. § 203(d). Hollis argues that Faillace

satisfied this requirement by terminating the agreement for Hollis to perform because of the lawsuit they filed against Sassy's.

The relevant statutory text provides: "it shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." *Id*. § 215(a)(3). Section 216(b) then creates a private right of action against any "employer" who violates § 215(a)(3), and § 203(d) defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."

In *Arias*, we held that the employer's attorney, Raimondo, could be held liable for retaliating against his client's former employee, Arias. 860 F.3d at 1187, 1192. Arias, who was undocumented, sued his former employer for workplace violations, including the failure to provide overtime pay and breaks for rest and meals. *Id*. at 1187. As the case approached trial, Raimondo repeatedly contacted U.S. Immigration and Customs Enforcement ("ICE") to seek Arias's deportation. *Id*. at 1187–88. In holding that Arias had stated a viable FLSA retaliation claim against Raimondo, we emphasized the statute's "remedial and humanitarian" purpose. *Id*. at 1192 (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). We also emphasized the FLSA's broad definition of "employer" as evincing clear congressional intent to extend the reach of § 215(a)(3) beyond "actual employers." *Id*. at 1191–92. Drawing on the analogous domain of Title VII, we explained that a rule limiting retaliation claims to adverse employment actions would frustrate the purpose of the statute because employers could "effectively retaliate against an employee

by taking actions not directly related to his employment." *Id.* at 1191 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006)).

In sum, while the FLSA retaliation provision only protects employees, *Arias* held that the employment relationship need not be current, the retaliator need not be the actual employer, and the retaliation need not take the form of an adverse employment action.

It is undisputed that Faillace was an owner and manager of Sassy's and that Hollis cannot prevail on the retaliation claim unless they were employed by Sassy's. Assuming that Hollis establishes an employer-employee relationship with Sassy's on remand, Faillace was Hollis's employer under the relevant legal standard. Defendants nonetheless argue that Faillace was not acting as Sassy's agent when he emailed Hollis to cancel the performance agreement at Dante's. Rather, they assert that "Faillace acted solely in his capacity as the proprietor of Dante's" in barring Hollis from performing there. But this argument misunderstands the statute, which does not require that the retaliator directly benefit the actual employer nor act under that employer's instructions to be considered an "employer" under 29 U.S.C. § 203(d). Rather, the FLSA only requires that the retaliator act "indirectly in the interest of an employer in relation to an employee." *Id.*

The FLSA defines "employer" to include (1) the actual employer, (2) persons acting "directly in the interest" of that employer, and (3) persons acting "indirectly in the interest" of the employer. *See id.* As noted above and like other courts, we identify the actual employer or employers through an economic realities test. *See, e.g.*, *Torres-Lopez*, 111 F.3d at 639. The second category, consisting of persons acting

"directly in the interest" of the employer, is also conceptually straightforward. For example, in *Arias*, Raimondo acted directly in the interest of Arias's former employer because he was the employer's attorney and agent, and because deporting Arias would have directly benefited the employer by impeding Arias's lawsuit. *See* 860 F.3d at 1187. In that scenario, Raimondo was retained by the employer to defend against the very lawsuit that his retaliatory actions would have thwarted. *Id*.

To act "*indirectly* in the interest" of the employer must then capture some lesser nexus than the nexus between Raimondo and Arias's former employer. Even if Faillace were not an owner-manager of Sassy's, his conduct would fit into this third category. The defendants argue that Faillace did not act to directly benefit Sassy's nor did he act as an agent of Sassy's, but, under the statute, Hollis did not need to establish that he acted in such a manner. Hollis only needed to show that Faillace acted indirectly in the interest of Sassy's via the allegedly retaliatory conduct. Hollis adequately alleged that Faillace did so by cancelling the agreement for Hollis to perform at Dante's because of Hollis's lawsuit against Sassy's. This constituted an indirect effort to minimize any liability of Sassy's as well as Dante's. Moreover, Faillace's action allegedly penalized Hollis for filing the lawsuit and would dissuade a reasonable person in Hollis's position from filing a lawsuit in the first place. To satisfy the low bar of "acting indirectly in the interest of [the] employer," there is no requirement that Faillace act under instructions from the rest of the Sassy's partners or confer a direct benefit on Sassy's.

In defining an employer to include "any person acting directly or indirectly in the interest of the employer in relation to an employee" Congress ensured that a private

right of action for retaliation under 29 U.S.C. § 216(b) would reach any defendant who violated the statute's prohibition on retaliating against an employee because of their protected activity. This interpretation conforms with our observation in *Arias* that the statutory definition of "employer" has a "clear[]" broadening effect. 860 F.3d at 1191–92. Moreover, the language referring to "any person acting directly or indirectly in the interest of the employer" was included when the Act was enacted in 1938 and stayed in place when the definition of "employer" was amended in 1974. *See* Fair Labor Standards Act of 1938, Pub. L. No. 75-718, § 3, 52 Stat. 1060; Fair Labor Standards Amendments of 1974, Pub. L. No. 93-259, § 6, 88 Stat. 55, 58. It was not a congressional accident or relic, but carries a specific meaning which we must recognize.[1]

## B.

As we noted above, the FLSA only protects "employees." *See* 29 U.S.C. § 215(a)(3) (prohibiting discrimination "against any employee because such employee has filed any complaint . . . related to this chapter"); *see also Arias*, 860 F.3d at 1190 ("[A] person who

---

[1] Other courts have noted that the FLSA's prohibition on retaliation under § 215(a)(3) extends to "any person," while the private right of action under § 216(b) only reaches an "employer." *See Kim v. Lee*, 576 F. Supp. 3d 14, 27–28 (S.D.N.Y. 2021), *aff'd*, No. 22-61, 2023 WL 2317248 (2d Cir. Mar. 2, 2023). But this difference does not appear to indicate congressional intent to limit the possible defendants in a private action. Rather, it reflects the fact that a private right of action under § 216(b) only extends to activities closely related to an employer (violations of wage and hour, retaliation, and tip retention provisions), while the list of prohibitions under § 215(a) also includes activities unrelated to the employer (e.g., prohibiting commerce involving goods produced in violation of the FLSA). *Compare* 29 U.S.C. § 215(a) *and id.* § 216.

never worked for the employer . . . does not fit anywhere in the FLSA."). Because Hollis claims that Faillace retaliated against them for filing a protected complaint concerning their employment at Sassy's, they must establish an employment relationship with Sassy's.

**1.**

The defendants argue that Hollis cannot establish an employer-employee relationship with Sassy's because any misclassification claims are time-barred. This is patently incorrect. There is nothing in the FLSA's text or purpose that requires plaintiffs who were misclassified as independent contractors to prevail on a misclassification claim as a predicate condition to bringing a retaliation action or claim. Rather, the meaning of the word "employee" is defined by the Act and well developed by our precedents. 29 U.S.C. § 203(e), (g); *see, e.g.*, *Torres-Lopez*, 111 F.3d at 638–39.

Under 29 U.S.C. § 203(e), "'employee' means any individual employed by an employer." Section 203(g) further advises that "'[e]mploy' includes to suffer or permit to work." To determine whether an individual is an employee or an independent contractor under the FLSA, this court has applied the economic realities test, which provides that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). In applying the economic realities test, we consider all factors relevant to the circumstances of the case. *Torres-Lopez*, 111 F.3d at 639.

We have previously outlined nonexhaustive factors relevant to identifying an employment relationship for FLSA purposes. For instance, in *Real*, we considered:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship; and
> 6) whether the service rendered is an integral part of the alleged employer's business.

603 F.2d at 754. And in *Bonnette v. California Health and Welfare Agency* we considered whether the employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 704 F.2d 1465, 1470 (9th Cir. 1983).

Only economic realities determine employee status, not the intent of the parties or contractual characterizations. *See Real*, 603 F.2d at 755. "The ultimate determination must be based 'upon the circumstances of the whole activity.'" *Bonnette*, 704 F.2d at 1470 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947)). As long as Hollis

can show that their work at Sassy's satisfied the economic realities test, then it is no obstacle to their retaliation action that any misclassification claim is time barred.

Another feature of the FLSA also supports our understanding that a plaintiff need not prevail on a misclassification claim to establish an employer-employee relationship. The FLSA explicitly protects individuals from retaliation for "fil[ing]" a complaint. 29 U.S.C. § 215(a)(3). That complaint need not result in a favorable judgment. In fact, the Supreme Court has interpreted § 215(a)(3)'s reference to "fil[ing] any complaint" to protect complaints that are merely informal and oral in nature. *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011). Imposing a requirement that the plaintiff *be successful* in separate *litigation* on the underlying protected complaint is therefore inconsistent with the Supreme Court's interpretation of the FLSA's requirements for maintaining a retaliation claim.

Finally, the defendants argue that "the FLSA statute of limitations bars all aspects of a claim, including any underlying argument supporting it." But the defendants do not support this argument with any relevant authority. The statute of limitations on a legal claim for damages does not bar a plaintiff from asserting the truth of that claim as a factual matter in order to prevail in a separate action or claim that is not time barred.

### 2.

Because the district court did not decide whether Hollis's work at Sassy's satisfied the economic realities test, we remand that issue so that the court may address it in the first instance or allow any material factual disputes to be resolved by the trier of fact. *See Bonnette*, 704 F.2d at 1469 (noting

that whether a party is an "employer" for FLSA purposes is a legal question).

Several of our sister circuits have applied the economic realities test to find that exotic dancers were employees of the clubs where they worked. Because these courts applied factors similar or identical to those outlined in *Real* and evaluated circumstances closely mirroring Hollis's work arrangement at Sassy's, they may provide some guidance to the district court on remand. *See, e.g.*, *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241–44 (4th Cir. 2016); *Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 229–32 (3d Cir. 2019); *Reich v. Circle C. Invs., Inc.*, 998 F.2d 324, 326–29 (5th Cir. 1993); *see also Harris v. Diamond Dolls of Nevada, LLC*, 521 F. Supp. 3d 1016, 1023–24 (D. Nev. 2021). However, the economic realities test is fact-bound, requiring application of all relevant factors to the particular facts of the plaintiff's work arrangement. *Torres-Lopez*, 111 F.3d at 639. We express no views on the merits of this issue.

## C.

Because we remand this case to the district court for further proceedings, we address a final issue that the defendants raise in support of the district court's judgment. Namely, the defendants contend that Faillace's conduct in canceling Hollis's scheduled performance at Dante's and refusing to contract with Hollis for further performances there did not constitute retaliation as a matter of law because it was a legitimate business decision to limit Dante's' liability. Taking the facts in the light most favorable to Hollis at this stage of the proceedings, we disagree.

**1.**

The FLSA states that "it is unlawful for any person . . . to discharge or in any other manner discriminate against" a current or former employee because they "filed any complaint . . . under or related to" the FLSA. 29 U.S.C. § 215(a)(3). The retaliatory conduct need not be limited to adverse employment action, and instead covers "adverse action" more generally. *See Arias*, 860 F.3d at 1190–91; *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 341–43 (4th Cir. 2008) (A plaintiff asserting FLSA retaliation must show that "(1) he engaged in an activity protected by the FLSA; (2) he suffered adverse action by the employer subsequent to or contemporaneous with such protected activity; and (3) a causal connection exists between the employee's activity and the employer's adverse action."). The statutory language is broad, covering "any other manner" of discrimination against the complaining employee. 29 U.S.C. § 215(a)(3). Conduct constitutes retaliation if it is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 57 (stating the standard in the analogous Title VII context).

Conduct that violates the FLSA anti-retaliation provision includes soliciting the former employee's deportation by ICE, *Arias*, 860 F.3d at 1187–88, as well as informing a prospective employer that an employee had filed a complaint with the Department of Labor, *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 141, 147 (6th Cir. 1977). We have also held that the refusal to renew time-limited employment contracts constituted retaliation in analogous contexts. *See MacIntyre v. Carroll Coll.*, 48 F.4th 950, 954–55 (9th Cir. 2022) (holding that nonrenewal of a golf coach's limited-term employment contract constituted retaliation under Title

IX); *see also Perry v. Sindermann*, 408 U.S. 593, 596–98 (1972) (holding that nonrenewal of a nontenured professor's one-year contract could constitute retaliation for protected speech).

Finally, at least one district court has ruled that a plaintiff stated a valid FLSA retaliation claim where "the alleged retaliation consists of the employer's refusal to provide its former employee work as an independent contractor, work that the employer was not contractually obligated to provide, but which the employer indicated would be provided." *Boscarello v. Audio Video Sys., Inc.*, 784 F. Supp. 2d 577, 578–79 (E.D. Va. 2011). As the summary judgment record shows, Hollis had contracted to perform at Dante's Sinferno Cabaret in the past, was scheduled to perform at least once more, and reasonably expected to be able to continue to do so in the future.

Canceling a scheduled work agreement and barring a worker from future contract opportunities cuts the worker off from an income source. It deprives the worker of funds they would otherwise have been able to earn. Refusing to contract with a worker is not categorically less likely to dissuade that worker from making a complaint than termination or demotion. On this record, a trier of fact could reasonably find that Faillace's actions were sufficiently harmful to constitute retaliation.

## 2.

The defendants argue that Faillace's email to Hollis canceling the performance agreement and barring them from future performances at Dante's constituted a legitimate business decision to protect Dante's from legal liability. As evidence in support of this theory, the defendants point out

that Hollis was allowed to continue to provide trainings for the staff of Dante's and Faillace's other clubs.

But this argument—that the cancellation of the performance agreement constituted a "reasonable, protective decision in the absence of legal certainty"—makes little sense. Hollis had already worked at Dante's twice and there was no reason that a third session would meaningfully increase the club's legal exposure. Moreover, Hollis's work at Dante's was not under the same terms as their work at Sassy's. At Dante's, they performed one brief pole dance within a predesignated time slot during a weekly variety showcase. At Sassy's, they danced for hours, multiple times a week, subject to the club's rules for exotic dancers, who were the main business of that club.

Although employers are not liable for adverse actions motivated by legitimate, nonretaliatory business reasons, such reasons usually include the employee's performance or the needs of the business. *See, e.g.*, *Knickerbocker v. City of Stockton*, 81 F.3d 907, 911 (9th Cir. 1996). The defendants cite no case establishing that an adverse action can be taken against a former employee because of that employee's protected complaint as long as the action was motivated by the desire to avoid future litigation or increased liability from the same employee.

Indeed, a rule allowing employers to evade liability for FLSA retaliation by claiming that they were merely minimizing legal exposure to serve the financial interests of their business would severely weaken the statutory protection. For instance, it would suggest that firing an individual complaining of minimum wage violations is a justified business decision because it limits the backpay or liquidated damages that the employee might recover in a

wage and hour suit. FLSA-covered employers cannot take adverse actions against FLSA plaintiffs and then avoid retaliation liability by explaining those actions as attempts to limit legal exposure created by their alleged violations of the Act. In other words, a financial interest in minimizing liability does not justify bald retaliation.

## IV.

We reverse the district court's order granting summary judgment to the defendants and remand for further proceedings consistent with this opinion. By their text, the FLSA provisions conferring a private right of action for retaliation, 29 U.S.C. §§ 215(a)(3), 216(d), and 203(d), do not require that the plaintiff be a current employee of the retaliator, but merely require that the retaliator act "indirectly in the interest of" the plaintiff's former employer in relation to the plaintiff. Faillace's conduct satisfies this requirement. On remand, the district court must determine whether Hollis was an employee of Sassy's and whether Faillace's conduct constituted retaliation in violation of the Act. In light of the foregoing, the state law claims are reinstated and can also be addressed on remand.

**REVERSED AND REMANDED for further proceedings consistent with this opinion**.